**UNITED STATES**

v.

**Airman Gordon L. SMITH, United States Air Force.**

**ACM S29720.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Aug. 1999.

Decided 13 Feb. 2001.

Appellate Counsel for Appellant: Colonel Jeanne M. Rueth and Major Gilbert J. Andia, Jr.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Bryan T. Wheeler.

Before SPISAK, Senior Judge, STARR, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

SPISAK, Senior Judge:

This case revolves around the 94 days the appellant spent in pretrial confinement before he was finally convicted, pursuant to his pleas, of absence without leave, dereliction of duty, larceny, and forgery. Articles 86, 92, 121, 123, UCMJ, 10 U.S.C. §§ 886, 892, 921, 923. He pled guilty to these charges, but contended at trial and before us that this delay violated his right to a speedy trial under Article 10, UCMJ, 10 U.S.C. § 810.

Officer members sentenced the appellant to a bad-conduct discharge, forfeiture of $639.00 pay per month for 6 months, reduction to E–1, and 3 months' hard labor without confinement. The convening authority did not approve the hard labor without confinement, but did approve the remainder of the sentence. He also directed that credit for five days of illegal pretrial punishment be applied against $160.00 of the first month's forfeitures. Nevertheless, the appellant contends that he was not given adequate credit for the time spent in pretrial confinement. He does not allege that the method of applying credit for the five days of illegal pretrial confinement awarded by the military judge was insufficient.

## I. SPEEDY TRIAL

The right to speedy trial is protected by four different legal authorities: (1) the Sixth

Amendment, Constitution of the United States; (2) the Fifth Amendment, Constitution of the United States, due process protections (*see United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977)); (3) Article 10, UCMJ; and (4) Rule for Courts–Martial (R.C.M.) 707. *See United States v. Birge*, 52 M.J. 209, 210–11 (1999). Before us, the appellant contends only that his right to a speedy trial under Article 10, UCMJ, was violated. That statute provides that if a person "is placed in arrest or confinement prior to trial, immediate steps shall be taken ... to try him or to dismiss the charges and release him." Article 10, UCMJ.

 Unless raised as a condition to his plea, an accused waives any speedy trial issue by pleading guilty. R.C.M. 707(e). Although the Court of Appeals for the Armed Forces (CAAF) held that an affirmative waiver is not necessary for an accused to waive his Article 10 speedy trial right, the Court has not applied R.C.M. 707(e) to claims raised under Article 10. *Birge*, 52 M.J. at 211–12. Article 10 provides a more stringent speedy trial requirement than the Sixth Amendment. The test for assessing claimed violations of Article 10 is whether the government acted with "reasonable diligence" in getting the case to trial. *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A.1993). Nevertheless, it is still appropriate to consider the same factors in resolving an Article 10 complaint—"in the context of Article 10's 'immediate steps' language and 'reasonable diligence' standard"—as the Supreme Court determined were appropriate in reviewing a Sixth Amendment speedy trial claim. *Birge*, 52 M.J. at 212 (applying four factors from *Barker v. Wingo*, 407 U.S. 514, 526–29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The four factors are (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's demand for speedy trial; and (4) prejudice to the appellant. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. 2182.

 Before applying the four *Barker v. Wingo* factors, we need to further explain the appellant's assignment of error. Charges were originally preferred against the appellant on 8 March 1999 (larceny of checks and bad checks). An additional charge of larceny of perfume was preferred on 26 March. The original charges were referred to trial on 29 March and the trial counsel declared herself ready to proceed to trial. On 26 April, the trial counsel recommended that the convening authority withdraw the charges because of defects in the specifications—e.g., naming a different victim of the larceny. The charges were withdrawn on 30 April 1999. The appellant absented himself again, and was placed in pretrial confinement on 1 May 1999. New charges were referred to trial on 24 June. On 29 June, the chief circuit military judge established 8 July as the next date on which a judge would be available, but the trial counsel noted that the government would be prepared for trial on 13 July. Thereafter, the defense counsel requested several delays because of his moving into base quarters and oral surgery. The trial was eventually held on 3 August. At no time did the appellant or his counsel demand a speedy trial.

## A. Discussion

The appellant complains because on 29 March 1999 the government had declared it was ready to proceed to trial, yet it took over four months to actually accomplish that goal. However, the government's declaration was made **before** the appellant absented himself from his place of duty and new charges had to be prepared. The government clearly had the right to investigate and charge these offenses. Although these additional charges could be tried in a separate proceeding, in military courts the general rule is that "all known charges should be referred to the same court-martial." R.C.M. 601(e)(2), Discussion.

Additionally, trial counsel asserted at trial that on 29 March 1999, the government and defense were negotiating a pretrial agreement that would have obviated the need to call expert witnesses to prove the forgery charges. Trial defense counsel acknowledged that such negotiations were conducted. When those negotiations broke down, the government needed time to obtain expert handwriting analysis, prepare its case with such experts, and obtain the original checks.

The government's failure to properly prepare for the first trial date did result in delays. We are amazed that counsel would ever go to trial, even where they expect a guilty plea, without having adequate evidence immediately available to prove their case. However, we cannot say that the government's attempts to expedite this case or their desire to fully prepare for a litigated case were unreasonable.

Finally, the parties agreed that, during the months leading up to the trial and while the appellant was confined, trial defense counsel not only made no demand for trial, he offered the government the option of trying this case or others that he had pending. As he explained to the military judge:

> When I was ... setting up the date, I was saying, these are the cases I have on my horizon, *Smith, Myricks, Gray.* Which one do you guys want to do first? So, it was the government that was saying, well, we want to go with *Gray,* and then with [trial counsel] I'm negotiating this case.... *Myricks* went on the 21st of July. I'm sending E-mails to them saying, hey, I've got a trial date. I can try one of these special courts-martial this week. Whoever bites first can go. [Another trial counsel] bit first with *Myricks.* Now, this could have been done back on 21 July. I'm not making the determination of when these cases go, so that's another point, Your Honor.

Despite his protestation that the government alone was responsible for the delays in this case, trial defense counsel never demanded a speedy trial. Perhaps he was confident that his motion to dismiss would succeed. Or, perhaps he believed that lengthy pretrial confinement would serve to lessen the sentence adjudged, which it apparently did. It is unclear exactly what trial defense counsel was thinking, but it is clear that he was aware of the speedy trial issue. Therefore, we conclude that counsel's decision to remain silent until trial was a tactical one that we will not second-guess. *See United States v. Sanders,* 37 M.J. 116, 118 (C.M.A.1993); *United States v. Travels,* 47 M.J. 596, 598 (A.F.Ct.Crim.App.1997), *aff'd,* 49 M.J. 125 (1998).

After careful review of the facts and the law, we conclude that the delay, and the reasons for it, were not unreasonable. However, trial counsel should not see this as approval of the amount of time taken to prosecute this case. When an accused has been confined, the government must take all necessary steps to promptly try the charges against him, even if defense counsel offers to do other cases first. On the other hand, when the government fails to do so, trial defense counsel should demand speedy trial both to preserve claimed violations of the client's speedy trial rights, and to obtain prompt resolution for the client.

Finally, we can find no prejudice to the appellant. While it is true that he spent a lengthy period of time in pretrial confinement, the members were aware of this fact and were instructed to take it into consideration when fashioning an appropriate sentence. Under these circumstances, the mere fact that no confinement was adjudged does not, by itself, prove prejudice.

Thus, applying the *Barker v. Wingo* factors, we find that the facts here do not raise the issue of an Article 10 violation. In short, the appellant has failed to demonstrate that his right to a speedy trial under Article 10, UCMJ, was violated.

## II. CREDIT FOR PRETRIAL CONFINEMENT

■ We review questions relating to pretrial confinement credit de novo, considering whether, as a matter of law, an appellant is entitled to a particular period of confinement credit. *United States v. Ballesteros,* 29 M.J. 14 (C.M.A.1989); *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). However, action taken by the convening authority is a matter of command prerogative and we may not substitute our judgment for his when confinement credit is not required as a matter of law. *United States v. Monckton,* 34 M.J. 73 (C.M.A.1991) (mem.).

The military judge advised the court members that it was appropriate for them to consider the 94 days the appellant spent in pretrial confinement in determining an appropriate sentence. He also instructed the

members that credit for the pretrial confinement would be applied against any confinement adjudged. In addition, the convening authority did not approve the adjudged three months of hard labor without confinement. The appellant contends that the convening authority disapproved the hard labor without confinement solely because the staff judge advocate (SJA) told him it would be inconvenient for the unit to supervise. Therefore, the appellant argues that he received no credit for 94 days spent in pretrial confinement to which he claims he is entitled.

In his *Goode* response to the SJA's recommendation (SJAR), the trial defense counsel argued that the appellant was entitled to more credit for pretrial confinement than there was hard labor without confinement to offset that credit. *See United States v. Goode,* 1 M.J. 3 (C.M.A.1975). His computations were based on R.C.M. 1003(b)(6) which limits sentences to hard labor to one and one-half months for each month of authorized confinement. He then asserted: "Thus, because AB Smith in effect has more hard labor without confinement credit than his sentence provided for, we concur with the [SJA] that you should not approve the adjudged hard labor without confinement." Thus, we are unwilling to accept the appellant's thesis that the convening authority disapproved the hard labor component of his sentence solely on the advice of his SJA. In fact, neither the appellant nor this Court can see into the heart and mind of the convening authority to determine whether he acted in response to the SJA's advice or in response to the defense request.

Still, if the defense analysis is correct, the appellant received credit for less than the total pretrial confinement served. We must, therefore, determine whether such a result violates any principle or precept of the law. We find that it does not.

█ In *United States v. Allen, supra,* our senior court declared that a service member who is confined prior to trial must be given credit for each day of such confinement against confinement adjudged. *Allen,* 17 M.J. at 128. The basis of that holding was Department of Defense (DOD) Instruction 1325.4, *Confinement of Military Prisoners*

*and Administration of Correctional Programs and Facilities* (7 Oct 1968), which made 18 U.S.C. § 3568 applicable to the military services. Currently, DODI 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority,* ¶ 6.3.1.5 (17 Dec 1999), provides that "[p]rocedures used to compute sentences **shall** conform to those established by the Department of Justice for Federal prisoners **unless** they conflict with this Instruction, [DOD Directive 1325.4], or existing Service regulations." *Id.* (emphasis added). We have found no conflicting provisions in the DOD instruction or directive. Nor have we found any controlling service regulation. Therefore, in accordance with our senior court's guidance in *Allen,* we must continue to follow the Department of Justice (DOJ) provisions concerning credit for pretrial confinement. *United States v. Pinson,* ACM 32963 (A.F.Ct.Crim.App. 29 Jan 2001).

The pertinent DOJ provisions are now contained in 18 U.S.C. § 3585(b), which provides as follows:

**Credit for prior custody.** A defendant **shall be given credit toward the service of a term of imprisonment** for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 USC § 3585(b) (emphasis added).

█ Since *Allen,* credit for pretrial confinement has been applied against confinement adjudged. The appellant now contends that when no confinement is adjudged, *Allen* credit must be applied against other parts of the sentence. In support of this contention, the appellant relies on *Allen* and R.C.M. 305(k) which was annexed to the opinion in *United States v. Rexroat,* 38 M.J. 292 (C.M.A.1993). However, as we have noted, *Allen* and the regulation and statute on which it is based, only require credit against

adjudged confinement. The statute is clear, "[a] defendant shall be given credit **toward the service of a term of imprisonment.**" 18 U.S.C. § 3585(b) (emphasis added). Thus, in order for the appellant to succeed, his argument must be supported by R.C.M. 305(k). It is not.

R.C.M. 305(k) creates a remedy for pretrial confinement that is illegal or in which government officials did not comply with the rules for pretrial confinement. Nothing in the rule suggests that credit for **legal** pretrial confinement must be applied against anything at all. Only *Allen* requires such credit, and there credit is only required against adjudged post-trial confinement.

We find that neither *Allen* nor R.C.M. 305(k) creates a right to receive credit for legal pretrial confinement against any portion of an adjudged sentence other than post-trial confinement. We also find that even if such a right existed, the appellant received ample credit both through the members' consideration of his pretrial confinement during their deliberations and from the convening authority when he disapproved the hard labor without confinement component of the adjudged sentence.

## III. POST–TRIAL PROCESSING

This case was poorly handled from beginning to end. First, the trial counsel planned to go to trial without witnesses or crucial evidence. Defense counsel then chose to negotiate trial dates for other cases while this appellant waited in pretrial confinement. Finally, the SJA purported to review the record of trial and make recommendations before that record was even authenticated.

While not raised on appeal, we are concerned by the post-trial processing of this case. The SJAR is dated nine days **before** the record was authenticated and only three days after it was sent to the military judge. While the defense counsel submitted clemency matters on 2 September 1999, just four days after the record was authenticated, it appears he did not have an opportunity to review the record until after action was taken.

We understand the desire to complete post-trial processing in an expeditious manner. However, SJAs must not circumvent or ignore important steps in the process, such as authentication of the record. Similarly, trial counsel are again reminded that they must allow defense counsel the opportunity to review the record **before** authentication, unless doing so would result in unreasonable delay. R.C.M. 1103(i)(1)(B). While neither trial nor appellate defense counsel alleged prejudice from these lapses, and we have found none, this sort of inattention to detail far too often creates unnecessary appellate issues.

## IV. CONCLUSION

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.