**UNITED STATES, Appellant,**

v.

**Sergeant Keith R. BREVARD, Sr., United States Army, Appellee.**

**ARMY MISC 20020711.**

U.S. Army Court of Criminal Appeals.

22 Nov. 2002.

For Appellee: David Court; Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Jeanette K. Stone, JA; Captain Fansu Ku, JA (on brief).

For Appellant: Lieutenant Colonel Lauren B. Leeker, JA; Lieutenant Colonel Paul H. Turney, JA; Captain Mark A. Visger, JA (on brief); Lieutenant Colonel Margaret B. Baines, JA.

Before CANNER, Senior Judge, HARVEY, and BARTO, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON APPEAL BY THE UNITED STATES FILED PURSUANT TO ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE

CANNER, Senior Judge:

In a timely appeal by the United States under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [hereinafter UCMJ], the government asks this court to reverse the military judge's decision to dismiss with prejudice a single charge and its specification of fraudulent separation, in violation of Article 83, UCMJ, 10 U.S.C. § 883, due to a lack of speedy trial as required by Article 10, UCMJ, 10 U.S.C. § 810. We agree with the government that appellee's right to a speedy trial was not violated and remand this case to the military judge for further action consistent with this opinion.

## STANDARD OF REVIEW

Under Article 62(b), UCMJ, we are limited in such appeals to review of "matters of law, notwithstanding [Article 66(c) ]." A military judge's conclusions as to whether an accused received a speedy trial is a question of law that is reviewed *de novo*. *See United States v. Thompson*, 46 M.J. 472, 475 (1997). We are required to give "substantial deference" to the military judge's findings of fact unless they are clearly erroneous. *United States v. Doty*, 51 M.J. 464, 465 (1999) (citations omitted). When reviewing matters of law, the question is not whether we might disagree with the trial judge's findings, but whether those findings are " 'fairly supported by the record.' " *United States v. Burris*, 21 M.J. 140, 144 (C.M.A.1985) (*quoting Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983)).

## FACTS

This appeal is intertwined with a previous attempt to prosecute appellee that was abated. The essential facts are not in dispute. Appellee's company commander flagged him on 4 May 2001, and informed him that no favorable actions would be authorized,[1] to include leave and passes. On 12 July 2001, charges were preferred against appellee for damaging military property, larceny (six specifications), assault upon a noncommissioned officer, obstruction of justice, and false swearing (two specifications), in violation of Articles 108, 121, 128, and 134, UCMJ, 10 U.S.C. §§ 908, 921, 928, and 934. Around the same time, appellee, without authority, requested clearing papers and expiration of term of service (ETS) orders from the Kitzingen Transition Center. Appellee had advanced his ETS to 11 August 2001 by cancelling his Foreign Service Tour extension. Apparently, no one in appellee's unit was aware of appellee's actions to cancel his tour extension, or to obtain ETS orders. Indeed, an investigation under provisions of Article 32, UCMJ, was scheduled beyond the new ETS that appellee had obtained.

Appellee presented a forged leave form, DA Form 31, purportedly signed by his commander, which was the prerequisite for him to receive clearing documents and to depart Germany on terminal leave.[2] Appellee was informed during out-processing that he was

1. *See* Army Reg. 600–8–2, Personnel—General: Suspension of Favorable Personnel Actions (Flags), para. 1–14g (30 Oct. 1987) [hereinafter AR 600–8–2] ("A flag prohibits ... discharge.").

2. *See United States v. Wilson*, 53 M.J. 327, 330 (2000) (holding that the accused's unauthorized absence suspended his ETS and the accused "remained on federal active duty during the period of his absence") (citation omitted); *United States v. Baca*, 3 M.J. 732, 733 (A.C.M.R.1977) (ETS date adjusted upon return from unauthorized leave); Rule for Courts–Martial [hereinafter R.C.M.] 202 discussion; Army Reg. 635–200, Personnel Separations: Enlisted Personnel, para. 1–21b (1 Nov. 2000).

flagged,[3] and he later submitted a forged flag removal form to the transition center. Appellee never actually cleared the various sections in his unit [4] and no member of his unit authorized him to begin this clearing process. On 10 August 2001, appellee presented forged clearing papers to the transition center in order to complete his final out-processing. In return, appellee received a courtesy copy, Copy 4, of Department of Defense Form 214, "Certificate of Release or Discharge from Active Duty" (DD Form 214) signed by an authorized official and bearing a discharge date of 11 August 2001.[5] In addition, the installation-level Finance personnel computed an estimate of appellee's final pay on a Separations Worksheet and reviewed the results with him. On 10 or 11 August 2001, appellee departed his unit and on 11 August 2001 he left Germany for the United States at government expense.

On 16 August 2001, appellee failed to appear at his Article 32, UCMJ, hearing. Later that day, at trial counsel's request, the Finance commander directed no further processing of appellee's final pay. Installation-level Finance had not yet conducted their required computer check with the Department of Defense Finance and Accounting Service (DFAS) to determine if appellee owed money to the government. Moreover, the installation-level Finance auditor had not yet conducted the final audit before payment of 80% of appellee's pay.[6] An authorizing official at installation-level did not approve any payments to appellee, and no money was, in fact, transferred or deposited into appellee's bank account until after he returned to military control (R. 134–153).

On 17 August 2001, the general court-martial convening authority (GCMCA) signed a memorandum stating, "[u]nder the provisions of AR 635–200, paragraphs 1–22 and 1–31, you are hereby retained beyond your expiration term of service until final disposition of the allegations of misconduct." This memorandum was sent to Personnel, Finance, and appellee's unit. The following chronology describes the processing of appellee's case starting from appellee's return to military control in November 2001.

| 8 November 2001 | Appellee, responding to a call from Criminal Investigation Command (CID) agents in Virginia, presents himself to authorities for questioning. He is initially detained at Fort Myer, Virginia and then flown back to Germany on 13 November. Pretrial confinement begins at Fort Myer on 8 November. |
|---|---|
| 14 November 2001 | Appellee arrives in Germany and is retained in pretrial confinement. He has been continuously confined since 8 November. |
| 26 November 2001 | Postmark date on Copy 1 of the appellee's DD Form 214 that was mailed to appellee's residence.[7] |
| December 2001 | Appellee's final pay is released to his bank. The money is recalled, however, before appellee gains access to it. |
| 18 December 2001 | Additional charges of desertion and disobeying a commissioned officer, in violation of Articles 85 and 90, UCMJ, 10 U.S.C. §§ 885 and 890 (but not fraudulent separation) are preferred against appellee. |

3. *See United States v. Williams,* 53 M.J. 316, 317 (2000) (valid legal hold issued on same date as discharge certificate rescinds discharge); *Smith v. Vanderbush,* 47 M.J. 56, 58 (1997) (flagging may render a subsequent discharge "void or voidable").

4. Appellee never cleared the unit First Sergeant, the Company Commander, the battalion motor pool, the company supply room, personnel services, the company training room, and battalion S–1 and S–2.

5. Although some copies of a DD Form 214 contain extra information not pertinent to a jurisdiction question, all copies bear the same separation date. See *United States v. Guest,* 46 M.J. 778, 780 n. 3 (Army Ct.Crim.App.1997), for the effect of receipt of a courtesy copy of DD Form 214; *see also* Army Reg. 635–5, Personnel Separations: Separation Documents, para. 1–11e (15 Sep. 2000) [hereinafter AR 635–5].

6. According to testimony at trial, actual receipt of 80% of final pay usually occurs 7–10 days after ETS. The remaining 20% of final pay is paid approximately 20 days later, after a second and final DFAS computer check.

7. In appellee's case, there was no testimony at trial that anyone from Personnel had contacted appellee to ascertain that "the soldier is alive and well and that his or her status has not changed" before mailing Copy 1 of his DD Form 214 to his separation address, nor is there any explanation regarding why delivery took so long. *See* AR 635–5, para. 2–5a.

| | |
|---|---|
| 21 December 2001 | Appellee attempts to waive the Article 32, UCMJ, investigation of the additional charges preferred on 18 December, but the government proceeds with investigation of the additional charges as well as original charges. |
| 8 February 2002 | Charges preferred on 12 July 2001 and additional charges preferred on 18 December 2001 are referred to general court-martial. |
| 13 February 2002 | Appellee is arraigned on the charges preferred on 12 July 2001 and the additional charges preferred on 18 December 2001, and Judge Wilkins hears evidence on the issue of personal jurisdiction. In response, the government relies primarily upon *United States v. Melanson*, 53 M.J. 1 (2000), and asserts that appellee was never discharged. Specifically, the government contends appellee did not complete the clearing process, nor did he receive his final pay. |
| 1 March 2002 | Judge Wilkins rules that: (1) appellee did not complete the clearing process and did not receive his final pay; (2) appellee obtained his discharge certificate through the use of fraud; (3) the flag, alone, was insufficient to extend appellee beyond his ETS because the GCMCA failed to take action to extend appellee on active duty prior to 11 August 2001; [8] (4) appellee was discharged on 11 August 2001 and jurisdiction terminated on 11 August 2001; and (5) the government was required to convict appellee of fraudulent separation before proceeding on the charges preferred. Judge Wilkins also abates the proceedings for 45 days to permit the government to file an appeal. Judge Wilkins schedules the next UCMJ art. 39(a) session for 16 April 2002. |
| March 2002 | The government notifies Judge Wilkins of its intent to appeal to this court under Article 62, UCMJ, 10 U.S.C. § 862, but then subsequently fails to timely file all necessary documentation. On 29 March 2002, the Government Appellate Division elects not to appeal. |
| 1 April 2002 | The government, for the first time, prefers a single charge of fraudulent separation against appellee, in violation of Article 83, UCMJ. |
| 1 May 2002 | Appellee waives the Article 32, UCMJ, investigation of the fraudu- |
| | lent separation charge and its specification. |
| 15 May 2002 | The fraudulent separation charge and its specification are referred to a general court-martial. |
| 23 May 2002 | Judge Wilkins arraigns the accused on the fraudulent separation charge and its specification. |
| 10 June 2002 | Judge Henley hears evidence on whether the fraudulent separation charge and its specification should be dismissed for lack of a speedy trial. |

On 3 July 2002, Judge Henley dismissed the fraudulent separation charge and its specification with prejudice for violation of Article 10, UCMJ. He found that appellee had: "(1) completed the clearing process, albeit deceptively; (2) received a final accounting of pay; and (3) was delivered his DD Form 214." Judge Henley determined that appellee "was discharged from the Army on 11 August 2001." He concluded:

[T]he government was legally compelled to first convict the accused for fraudulent separation and their decision not to proceed initially on that charge before trying him on the larceny related offenses was based on a *grossly negligent and unreasonable interpretation of both the undisputed facts and the existing case law.* Despite being repeatedly alerted to this problematic position by both Judge Wilkins and opposing counsel, the government's inaction on the Article 83 charge was *a transparent attempt to circumvent the requirement to first convict for fraudulent separation* and resulted in the accused being held in pretrial confinement some 142 days [apparently calculated from the start of pretrial confinement to preferral of the fraudulent separation charge] before there was any movement on this case. *The government could have proceeded to trial on the fraudulent separation charge much sooner* than 1 April 2002 *but negligently chose not to do so.*

(Emphasis added).

The government filed a timely notice of appeal with Judge Henley and this court.

8. Army Regulation 600–8–2, para. 1–16 states, "Soldiers will not be retained past their ETS ... because they are flagged. All actions must be executed prior to ETS ... or authority must be obtained from the GCMCA or HQDA to extend the ETS...." "The requirement of personal ap-

proval by the general court-martial authority concerned is a protective measure designed to safeguard against unwarranted extensions of tours of active duty." *United States v. Self*, 13 M.J. 132, 137 n. 12 (C.M.A.1982) (citation omitted).

## LAW

### A. Speedy Trial

Article 10, UCMJ, provides in pertinent part: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." Our superior court has repeatedly rejected the notion of a "magic number" of days in the application of Article 10, UCMJ. A case-by-case analysis of pretrial processing is required:

> We see nothing in Article 10 that suggests that speedy-trial motions could not succeed where a period under 90—or 120—days is involved. At the same time, we recognize that there are many circumstances that justify even longer periods of delay. However, where it is established that the [g]overnment could readily have gone to trial much sooner than some arbitrarily selected time demarcation but negligently or spitefully chose not to, we think an Article 10 motion would lie.

*United States v. Kossman,* 38 M.J. 258, 261 (C.M.A.1993) (noting that R.C.M. 707 provides "good guidance to both the Bench and Bar" to analyze speedy trial issues).[9]

■ The test for assessing an alleged violation of Article 10 is whether the government acted with "reasonable diligence" in getting the case to trial. *Kossman,* 38 M.J. at 262 (citation omitted). "Nevertheless, it is still appropriate to consider the same factors in resolving an Article 10 complaint—in the context of Article 10's immediate steps language and reasonable diligence standard—as the Supreme Court determined were appropriate in reviewing a Sixth Amendment

speedy trial claim."[10] These factors are " '[l]ength of delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant.' These factors are to be balanced 'on an *ad hoc* basis.' "[11] Judge Henley's sole basis for concluding that appellee was denied a speedy trial was that the reason for the delay was the government's decision not to charge appellee with fraudulent separation until 1 April 2002.[12]

### B. Void or Voidable Discharge

■ Key to Judge Henley's speedy trial ruling is his finding that appellee received a voidable discharge effective 11 August 2001. Our superior court has repeatedly observed that "[i]t is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." *United States v. Howard,* 20 M.J. 353, 354 (C.M.A.1985) (footnote omitted). However, that same court has also held that a discharge will not be considered lawful unless the following conditions are met:

> (1) the member received a valid discharge certificate or a certificate of release from active duty, such as a Department of Defense Form (DD Form) 214; (2) the member's "final pay" or "a substantial part of that pay" is "ready for delivery" to the member; and (3) the member has completed the administrative clearance process required by the Secretary of the service of which he or she is a member.

*Melanson,* 53 M.J. at 2 (citations omitted).

### DISCUSSION

■ Judge Henley concluded that appellee had been discharged, thereby necessitating

---

9. *See also United States v. McLaughlin,* 50 M.J. 217, 218–19 (1999) (holding no Article 10, UCMJ, violation with 69 days in pretrial confinement before preferral of charges and a total of 95 days in pretrial confinement before trial); *United States v. Hatfield,* 44 M.J. 22, 23–24 (1996) (upholding trial judge's dismissal of "relatively simple, pre-investigated" charges, noting that the late appointment of defense counsel delayed appellant's initial meeting with his lawyer by 40 days, and because "48 days, in which little or nothing was accomplished ... 'caused 106 days of confinement to unnecessarily accumulate before the accused c[ould] be brought to trial' ") (quoting trial judge).

10. *United States v. Smith,* 54 M.J. 783, 785 (A.F.Ct.Crim.App.2001), *aff'd,* 56 M.J. 290 (2002) (quoting *United States v. Birge,* 52 M.J. 209, 212 (1999), and applying the four factors from *Barker v. Wingo,* 407 U.S. 514, 526–29, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

11. *United States v. Grom,* 21 M.J. 53, 56 (C.M.A. 1985) (quoting *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. 2182).

12. His findings did not reflect any other analysis of the *Barker v. Wingo* factors.

his trial and conviction for fraudulent separation before the government could exercise jurisdiction over offenses committed prior to the discharge.[13] This conclusion was based, in part, upon his finding that appellee had received a "final accounting of pay." Judge Henley found that appellee had processed through the Finance office and was told how much money he could expect to receive upon his discharge. The military judge concluded that this was sufficient to constitute the "final accounting of pay" under *Melanson.* We disagree. We have previously held that finance outprocessing almost identical to that in appellee's case was insufficient to constitute a "final accounting of pay." *See Guest,* 46 M.J. at 779. Likewise, here we hold that a final accounting of pay did not occur under the facts of appellee's attempted separation.[14]

As a result, Judge Henley erred as a matter of law in finding that appellee had been discharged and that an Article 10, UCMJ, speedy trial violation occurred because the government's prior prosecution based on continuing jurisdiction was "grossly negligent and unreasonable." In law and fact, the government's theory and actions were correct.

## DECISION

The appeal of the United States pursuant to Article 62, UCMJ, is granted. Judge Henley's ruling dismissing the Charge and its Specification of fraudulent separation with prejudice, for violation of Article 10, UCMJ, is vacated. The record of trial will be returned to the military judge for action not inconsistent with this opinion.[15]

Judges HARVEY and BARTO concur.

---

13. *See* UCMJ art. 3(b), 10 U.S.C. § 803(b); *United States v. Reid,* 46 M.J. 236, 238 (1997).

14. The Army cannot extend court-martial jurisdiction indefinitely simply by not calculating or not paying the soldier's final pay. Paragraph 311304, DFAS–IN Regulation 37–1, Finance and Accounting Policy Implementation, dated January 2000, states that the post-separation audit should be performed at the DOS (date of separation) plus 20 days and that any remaining pay due should then be paid to the soldier. This regulation is available at https://dfas4dod.dfas.mil/centers/dfasin/library/ AR37–1/.

15. As a result of our conclusion that appellee was never fraudulently separated, the presiding military judge must now decide whether to set aside Judge Wilkins' abatement of the original charges against appellee or permit the government to proceed against appellee with a charge and specification of attempted fraudulent separation in violation of Article 80, UCMJ, 10 U.S.C. § 880. Because the government did not complete the appeal of Judge Wilkins' ruling, her abatement of the original charges and specifications remains in effect until dissolved by the presiding military judge.