UNITED STATES, Appellee,

v.

David M. MELANSON, Private,
U.S. Army, Appellant.

No. 99–0619.
Crim.App. No. 9801266.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 3, 2000.

Decided April 24, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., SULLIVAN and GIERKE, JJ., and COX, S.J., joined.

For Appellant: *Colonel Adele H. Odegard* (argued); *Major Scott R. Morris* (on brief); *Colonel John T. Phelps II* and *Major Leslie A. Nepper.*

For Appellee: *Captain Arthur L. Rabin* (argued); *Colonel Russell S. Estey* and *Major Patricia A. Ham* (on brief); *Captain John W. O'Brien.*

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to his pleas, of failing to obey a lawful order, willfully failing to obey the lawful order of a superior commissioned officer, wrongful use of methamphetamines (2 specifications), aggravated assault, and breaking restriction (2 specifications), in violation of Articles 92, 90, 112a, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 890, 912a, 928, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 30 months, total forfeitures, and reduction to the lowest enlisted grade. The military judge also ruled that appellant was entitled to 57 days' confinement credit as a result of the imposition of pretrial restriction tantamount to confinement.

The convening authority approved the sentence and awarded appellant 57 days' confinement credit. The Court of Criminal Appeals affirmed. 50 MJ 641 (1999).

On appellant's petition, we granted review of the following issue:

WHETHER THE ARMY LACKED *IN PERSONAM* JURISDICTION OVER APPELLANT BECAUSE HE HAD BEEN VALIDLY DISCHARGED FROM ACTIVE DUTY.

For the reasons discussed below, we hold that the Army had jurisdiction over appellant.

## I. BACKGROUND

### A. Legal Setting

■ Subject to certain narrow exceptions that are not applicable to the present case, a court-martial does not have jurisdiction over persons lawfully discharged from the armed forces, including cases involving offenses allegedly committed prior to discharge. *Smith v. Vanderbush*, 47 MJ 56 (1997); *see United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). A servicemember will not be considered to have been lawfully discharged, however, unless: (1) the member received a valid discharge certificate or a certificate of release from active duty, such as a Department of Defense Form (DD Form) 214; (2) the member's "final pay" or "a substantial part of that pay" is "ready for delivery" to the member; and (3) the member has completed the administrative clearance process required by the Secretary of the service of which he or she is a member. *United States v. King*, 27 MJ 327, 329 (CMA 1989); *accord United States v. King*, 42 MJ 79, 80 (1995); *see* 10 USC §§ 1168 and 1169.

Under paragraph 1–31d of Department of the Army Regulation (AR) 635–200 (26 June 1996), a discharge takes effect at "2400 [hours] on the date of notice of discharge to the soldier." Even if a discharge certificate and separation orders are delivered to a member earlier in the day as an administrative convenience for the unit or the servicemember, the discharge is not effective upon such a delivery unless it is clear that it was intended to be effective at the earlier time. *Compare United States v. Batchelder*, 41 MJ 337 (1994), *with United States v. Howard*, 20 MJ 353 (CMA 1985); *see also United States v. Guest*, 46 MJ 778 (Army Ct.Crim.App. 1997).

■ When an accused contests personal jurisdiction on appeal, we review that question of law *de novo*, accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record. *See United States v. Owens*, 51 MJ 204, 209 (1999).

### B. Factual Setting

On April 27, 1998, appellant's command processed him administratively for an early involuntary separation because of drug abuse. *See* para. 14–12c, AR 635–200. A general discharge was approved by appropriate authority on May 13, 1998. The approved discharge orders stated: "Date of discharge unless changed or rescinded: May 20, 1998."

On May 19, the day before his scheduled discharge, appellant completed all required steps to outprocess from his unit. As part of that process, he visited his local finance office and completed all finance outprocessing, as evidenced by a finance clerk's signature on the appropriate line of appellant's Unit Installation Clearance Record. His final pay was computed, and he made the necessary arrangements for his final pay to be sent to him following the required review all of his financial records, which could take up to 45 days after clearance.

On the question of whether appellant received a discharge certificate, a transition specialist from the local transition center testified that under standard operating procedures, the member would receive Copy 4 of DD Form 214, a courtesy copy of the document, if he or she was undergoing processing on a date prior to the date of his discharge. The original of the DD Form 214, Copy 1, would be mailed to the member within 5 days of the date of his discharge. The transition specialist testified that he recalled giving appellant the courtesy copy (Copy 4) of DD Form 214 on May 19. The specialist did not recall giving appellant the original (Copy 1).

At 12:08 a.m. on May 20, appellant signed out of his unit, and a noncommissioned officer signed the departure block on his leave form, which purported to place appellant on leave status for May 20 and 21. Appellant was escorted to the Nurnberg airport by a noncommissioned officer from his unit, where he boarded a commercial plane with a government-purchased ticket, headed for the United States via Frankfurt. Appellant's escort returned to the installation by 9:00 a.m.

In the meantime, Army investigators had identified appellant as possibly involved in an assault committed on May 10. On the morning of May 20, the investigators determined that they had sufficient evidence of appellant's involvement to treat him as a suspect. When an investigator told appellant's commander later that morning that an eyewitness to the assault had identified appellant as an assailant, the commander told the investigator to try to stop appellant from boarding his connecting flight in Frankfurt. At 6:00 p.m. on May 20, at the direction of the brigade commander, appellant's separation from the Army was cancelled, and he was retained on active duty for the purpose of an investigation and possible court-martial.

At the request of the military police in Frankfurt, the local German police intercepted appellant in Frankfurt and returned him to military control. Appellant arrived at his unit at approximately 11:00 p.m., May 20, 1998. At 11:37 p.m., appellant waived his rights under Article 31, UCMJ, 10 USC § 831, and admitted that he had participated in the assault. Appellant was restricted to his battalion area on May 21, and charges were preferred on June 24, 1998.

## II. DISCUSSION

Appellant contends that both the trial evidence and other documents filed as appellate exhibits in the Court of Criminal Appeals and this Court demonstrate that he received Copy 1 of the DD Form 214, and that such action reflects the command's intent for his discharge to be effective immediately upon delivery of the document, not at 2400 hours. The record of trial, however, amply supports the finding of the military judge that appellant did not receive Copy 1, and the documents filed in the appellate courts do not demonstrate that the finding was clearly erroneous.

Appellant acknowledged in the Stipulation of Fact admitted at trial in support of his guilty pleas that he received Copy 4 of the DD Form 214, and he made no mention at trial of having received Copy 1. The military judge's finding is further supported by the testimony of the transition specialist that the standard procedure at the transition point was to mail the original copy to the member at the member's leave address after the discharge date. Moreover, the copy of appellant's DD Form 214 in the record reflects that appellant had initialed box 30, requesting Copy 4 of the form. In short, there is no significant evidence demonstrating that the military judge clearly erred when she found that appellant received Copy 4 of his DD Form 214, not Copy 1.

■ As noted in Part I.B., *supra*, appellant's discharge orders stated that the date of discharge was May 20, 1998. Under the applicable regulation, an administrative discharge "is effective at 2400 [hours] on the date of notice of discharge to the soldier." In the absence of a clear showing of an intent to discharge a servicemember prior to 2400 hours, we will presume that a discharge has taken effect in accordance with the regulation.

■ Appellant argues that the intent to discharge him prior to 2400 hours is apparent from the testimony of Captain Finn, his company commander. Finn testified that he discussed the case with his battalion commander at a point in time when the investigation had produced no firm evidence of appellant's involvement, noting that the commander told him, "Unless you've got [eyewitness identification of appellant], you're going to have to let him go." This comment, which at best is ambiguous, reflects a recognition that the Army could not extend appellant's active duty beyond May 20 without evidence of his criminal involvement. It does not reflect a clear statement of intent to bypass normal regulatory practice and discharge appellant prior to 2400 hours on May 20.

We do not agree with appellant that the present case is controlled by *United States v. Howard, supra*. In *Howard*, the military judge entered findings of fact as to each element of the three-part test for completion of a discharge and concluded that the servicemember had been discharged. In the absence of a determination that the military judge's findings were clearly erroneous, we concluded that the servicemember's commander had made an informed decision to discharge him prior to 2400 hours. The military judge did not enter such findings in the present case, however, and her findings of fact were not clearly erroneous. Under the circumstances, we conclude that appellant's administrative discharge was not effective until 2400 hours on May 20, 1998. Because the discharge was withdrawn prior to that time for purposes of an investigation with a view towards a possible court-martial, the Army did not lose jurisdiction over appellant.

In light of our conclusion, it is not necessary for us to determine whether the military judge and the court below were correct in concluding that jurisdiction would have continued based upon issues concerning the procedures for clearance and accounting of pay.

## III. DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.