IN THE CASE OF


UNITED STATES, Appellee

v.

Michael J. HENDERSON, Damage Control Fireman Apprentice
U.S. Navy, Appellant

No. 03-0470

Crim. App. No. 200101752

---

United States Court of Appeals for the Armed Forces

Argued December 9, 2003

Decided March 26, 2004

ERDMANN, J., delivered the opinion of the Court, in which
GIERKE, EFFRON, and BAKER, JJ., joined. CRAWFORD, C.J., filed a
dissenting opinion.

Counsel

For Appellant: Lieutenant Rebecca S. Snyder, JAGC, USNR.

For Appellee: Lieutenant Frank L. Gatto, JAGC, USNR (argued);
Commander R. P. Taishoff, JAGC, USN (on brief).

Military Judge: B. W. MacKenzie


 **This opinion is subject to editorial correction before final publication**.

Judge ERDMANN delivered the opinion of the Court.

Appellant Damage Controlman Fireman Apprentice (DCFA) Michael J. Henderson was charged with making a false official statement, willful damage to military property, willfully hazarding a vessel, wrongfully using marijuana, larceny of military property, and wrongful appropriation, in violation of Articles 107, 108, 110, 112a, and 121 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 907-908, 910, 912a, and 921 (2000), respectively. The only charge at issue in this appeal is "willfully hazarding a vessel" in violation of Article 110.

Henderson was convicted by a military judge at a special court-martial of the lesser-included charge of negligently hazarding a vessel and other charges pursuant to his pleas, and sentenced to a bad-conduct discharge, confinement for five months, forfeiture of $500 pay per month for five months, and reduction to the lowest enlisted grade (E-1). Pursuant to the pretrial agreement, the convening authority approved the sentence as adjudged and suspended all confinement in excess of 51 days. The Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilty and the sentence in an unpublished opinion.

We granted review of the following issues pursuant to Article 67(b), UCMJ, 10 U.S.C. § 867(b) (2000):

2

    I.        WHETHER APPELLANT'S SPECIAL COURT-MARTIAL LACKED JURISDICTION TO TRY HIM FOR AN ALLEGED VIOLATION OF ARTICLE 110, UCMJ, A CAPITAL OFFENSE, WHERE THE SPECIAL COURT-MARTIAL CONVENING AUTHORITY REFERRED THE CHARGE TO A SPECIAL COURT-MARTIAL WITHOUT OBTAINING CONSENT FROM APPELLANT'S GENERAL COURT-MARTIAL CONVENING AUTHORITY.

    II.     WHETHER APPELLANT'S PLEA OF GUILTY TO NEGLIGENTLY HAZARDING A VESSEL WAS IMPROVIDENT.

We hold that the special court-martial lacked jurisdiction over the charge of willfully hazarding a vessel and the lesser-included charge of negligently hazarding a vessel, and therefore the findings related to the lesser-included offense of negligently hazarding a vessel are void. In light of this disposition, we do not reach Issue II.

FACTS

Henderson was stationed on board the USS TARAWA. He built an improvised explosive device out of urine sample tubes, crushed flare powder, electrical wires, oil and washers. According to Henderson, he intended to detonate the device onboard ship in order to commit suicide. He planned to detonate the device by inserting the wires into an electrical socket, which he believed would heat the wires and ignite the flare powder thereby causing a chain reaction which would expel the burning oil and washers. After Henderson built the device he placed it in a box which he taped shut and stored in the fan room onboard ship. Before he could initiate his suicide plan, the device was discovered and removed.

3

The charges against Henderson, including the charge of willfully hazarding a vessel in violation of Article 110, were referred to a special court-martial by the commanding officer of the USS TARAWA, an officer who exercised only special court-martial jurisdiction. Henderson entered into a plea agreement in which he agreed to plead guilty to, inter alia, the lesser-included offense of negligently hazarding a vessel. The charge of willfully hazarding a vessel, however, was not dropped from the charge sheet and the lesser-included offense was not referred separately. The military judge conducted a providence inquiry after which Henderson was convicted of those charges to which he had pleaded guilty and was acquitted of the charges to which he had pleaded not guilty, including the offense of willfully hazarding a vessel.

### DISCUSSION

The jurisdiction of a special court-martial over a non-mandatory capital offense is a legal question which we review de novo. See United States v. Melanson, 53 M.J. 1, 2 (C.A.A.F. 2000)(in personam jurisdiction).

The elements of Article 110, "improper hazarding of vessel," are "(1) [t]hat a vessel of the armed forces was hazarded in a certain manner; and (2) [t]hat the accused by certain acts or omissions, willfully and wrongfully, or negligently, caused or suffered the vessel to be hazarded."

4

Manual for Courts-Martial, United States (2002 ed.) [MCM], Part IV, para. 34.b. Willfully hazarding a vessel is a non-mandatory capital offense, punishable by "[d]eath or such other punishment as a court-martial may direct." Id. at Part IV, para. 34.e. Negligently hazarding a vessel is a lesser-included, noncapital offense, punishable by "[d]ishonorable discharge, forfeiture of all pay and allowances, and confinement for 2 years." Id.

Article 19, UCMJ, 10 U.S.C. § 819 (2000) "jurisdiction of special courts-martial," provides in pertinent part: "[S]pecial courts-martial have jurisdiction to try persons subject to this chapter for any noncapital offense made punishable by this chapter, and, under such regulations as the President may prescribe, for capital offenses." Rule for Courts-Martial 201(f)(2)(C) [R.C.M.], a regulation prescribed by the President, withholds jurisdiction over mandatory capital cases from special courts-martial, but does provide for jurisdiction over non-mandatory capital offenses under two circumstances: (1) when permitted by an "officer exercising general court-martial jurisdiction over the command which includes the accused"; and (2) when authorized by regulation by the Secretary concerned. R.C.M. 201(f)(2)(C)(ii)-(iii). There is neither evidence nor argument that either of the exceptions in R.C.M. 201(f)(2)(C) applied in Henderson's case.

The Government argues that despite the lack of permission under R.C.M. 201(f)(2)(C)(ii) or (iii), the special court-martial had jurisdiction in this case because: (1) the convening authority "functionally" referred the charge of negligently hazarding the USS TARAWA when Henderson entered into the pretrial agreement; (2) even if this Court were to find that the pretrial agreement was not the functional equivalent of a formal referral, the lesser-included charge was still implicitly referred to the special court-martial when the convening authority referred the capital charge; and, in any event, (3) the failure to obtain the permission of the officer exercising general court-martial jurisdiction over an accused prior to referring a capital offense is a nonjurisdictional, procedural defect which is forfeited if not raised at trial.

We will first address the Government's argument that the referral of a non-mandatory capital offense to a special court-martial without first securing permission from the officer exercising general court-martial jurisdiction over the accused is a nonjurisdictional, procedural defect, as that issue is largely dispositive of the remaining issues.

1.  Nonjurisdictional Procedural Defect

The Government asks us to find that the error here was a nonjurisdictional procedural defect and urges us to overrule United States v. Bancroft, 3 C.M.A. 3, 11 C.M.R. 3 (1953).

6

Bancroft was a Korean War case where the accused had been charged with violation of Article 113, UCMJ, 10 U.S.C. § 913 (2000) for sleeping at his post.  A conviction for violation of Article 113 during time of war was (and still is) punishable "by death or such other punishment as a court-martial may direct." The charges were referred to a special court-martial which found Bancroft guilty and sentenced him to a bad-conduct discharge, forfeiture of $30 a month for six months, and confinement for six months.

A Navy board of review[1] held that because a violation of Article 113 could be punished by death when committed in time of war and because the offense occurred in Korea during wartime, the case was capital and the special court-martial had no jurisdiction.  The Judge Advocate General of the Navy certified that issue to this Court which analyzed the limited jurisdiction of special courts-martial under Article 19, and paragraph 15 of the MCM (1951 ed.).[2]  This Court noted that neither the officer

---

[1] The term "board of review" was replaced by "Court of Military Review" in 1968.  Military Justice Act of 1968, Pub. L. No. 90-632, § 25, 82 Stat. 1335, 1341 (1968).  That term was in turn replaced by "Court of Criminal Appeals" in 1994.  National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 924(b), 108 Stat. 2663, 2831 (1994).

[2] MCM (1951 ed.) paragraph 15 is the predecessor to R.C.M. 201(f)(2).  The limitations and exceptions with regard to jurisdiction over capital cases are unchanged.

exercising general court-martial jurisdiction nor the Secretary of the Navy had authorized the referral and held that the special court-martial did not have jurisdiction to try the non-mandatory capital offense of sleeping at a post during wartime in violation of Article 113. The special court-martial's findings and sentence on that charge were therefore void. Bancroft, 3 C.M.A. at 11, 11 C.M.R. at 11.

The Government does not challenge the validity of the Bancroft holding on legal grounds, but rather argues that several of our more recent decisions characterizing certain forms of error in the referral process as nonjurisdictional have eroded its continued validity. The Government points to our decision in United States v. Jeter, 35 M.J. 442, 447 (C.M.A. 1992), where we found that the failure of a general court-martial convening authority who was also an accuser to forward charges to the next higher level for referral was nonjurisdictional error. See also United States v. Shiner, 40 M.J. 155, 157 (C.M.A. 1994). Similarly, the Government points to our decision in United States v. Kohut, 44 M.J. 245, 250 (C.A.A.F. 1996), where we found the referral of charges to a special court-martial in violation of a service policy to be nonjurisdictional error.

Even if we were to assume that our decisions in Jeter and Kohut represent some form of "evolution" in the law applicable

to jurisdictional defects in the referral process, that "evolution" does not extend so far as to alter the logic and holding in Bancroft. None of the cases relied on by the Government involves the factors common to both Bancroft and the present case -- the referral of a capital charge to a special court-martial without authorization from the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy.

The situation in the present case is strikingly similar to Bancroft, and we take this occasion to reaffirm our holding in that case. As in Bancroft, the officer making the referral here exercised only special court-martial jurisdiction and referred a capital charge to a special court-martial without the authorization to do so. We therefore find that the court-martial in the present case lacked jurisdiction over the capital charge of willfully hazarding a vessel.

## 2. The Functional Equivalent of a Referral

The Government goes on to argue that even if there was no jurisdiction over the charge of willfully hazarding a vessel, when the special court-martial convening authority entered into a plea agreement with Henderson, in which Henderson agreed to plead guilty to the lesser-included charge of negligently hazarding a vessel, that agreement became the "functional equivalent" of a referral authorized under R.C.M. 601. The

Government therefore asserts that the plea agreement was essentially a new referral of the lesser-included charge of negligently hazarding a vessel, a charge which the commanding officer of the USS TARAWA was authorized to refer as a special court-martial convening authority.

The Government looks to our decision in United States v. Wilkins, 29 M.J. 421 (C.M.A. 1990), for support of its position. In Wilkins, the accused was charged with larceny but entered into a pretrial agreement with the special court-martial convening authority in which he agreed to plead guilty to receiving stolen property. The offense of receiving stolen property was not included in the original referral of charges, nor is it a lesser-included offense to the offense of larceny. This Court concluded that the pretrial agreement between Wilkins and the convening authority was the functional equivalent of a referral of the charge and specifications of receiving stolen property. Id. at 424.

In Wilkins, however, the convening authority had the authority to refer both the larceny and receiving stolen property charges to the special court-martial, and the court-martial had subject matter jurisdiction over the offenses. The Court's decision was based on the rationale that while a referral is a jurisdictional prerequisite, the form of the referral is not jurisdictional. Id. The unusual form of the

10

referral was therefore a nonjurisdictional irregularity in the trial process. Id. at 424-25.

The Government's reliance on Wilkins is misplaced. The case before us involves a challenge to the jurisdiction of a special court-martial to try a non-mandatory capital offense in the absence of authorization from either the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy - - it is not simply a challenge to the "form" of the referral. Under the circumstances found in this case, the special court-martial lacked jurisdiction ab initio. "[W]hen a criminal action is tried before a court which does not have jurisdiction, the entire proceedings are a nullity."[3] Bancroft, 3 C.M.A. at 11, 11 C.M.R. at 11.

The primary distinction between this case and Bancroft is that Henderson was not convicted of a capital offense but only of a noncapital, lesser-included offense. That distinction, however, does not change the result. Because the offense of negligently hazarding a vessel never achieved the status of an independent charge, the court's jurisdiction over it derived only from the improperly referred capital offense of willfully hazarding a vessel, and thus rises and falls with the

---

[3] In Bancroft the only charge was the jurisdictionally-defective capital charge. Jurisdiction over a charge unrelated to a jurisdictionally-defective charge or a lesser-included offense of the unrelated charge remains valid. Only the finding and sentence related to the defective charge are a nullity.

11

jurisdiction over the greater offense. To recognize the pre-trial agreement in this case as the "functional equivalent" of a new referral would require this Court to find jurisdiction where it does not otherwise exist. This we cannot do.

3. Implicit Referral

The Government alternatively argues that when the special court-martial convening authority referred the charge of willfully hazarding a vessel to the special court-martial, it implicitly referred the lesser-included offense of negligently hazarding a vessel at the same time, under the general principles of notice pleading. The Government relies primarily on our statement in United States v. Virgilito, 22 C.M.A. 394, 396, 47 C.M.R. 331, 333 (1973), that a lesser-included offense does not have to be independently referred if the allegations "fairly embrace the elements of the lesser offense and thus give adequate notice to the accused of the offenses against which he must defend." Id.

Virgilito does not control the outcome here because it did not involve any defect in the court's jurisdiction over the originally preferred charge. Henderson's special court-martial had no jurisdiction to try a capital charge without authorization from either the officer exercising general court-martial jurisdiction over the accused or from the Secretary of the Navy. Since the lesser-included charge of negligently

12

hazarding a vessel was never formally referred under R.C.M. 601, it was dependent on the greater charge and was fatally tainted by the lack of jurisdiction.

For all these reasons, Henderson's conviction for negligently hazarding a vessel cannot stand.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals as to Charge III and the sentence is reversed, but is affirmed in all other respects. The finding of guilty of Charge III and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals. That court may either dismiss Charge III and reassess the sentence based on the affirmed guilty findings or order a rehearing.

CRAWFORD, Chief Judge (dissenting):

The majority holds that the lesser-included charge of negligently hazarding a vessel was "fatally tainted" by the lack of jurisdiction for the greater charge. On the contrary, the convening authority's derivatively defective referral of the lesser-included charge constituted waivable, nonjurisdictional error, which not only failed to prejudice Appellant, but actually benefited him. For this reason, I respectfully dissent from the lead opinion.

"[I]t is well established that a defective referral . . . does not constitute jurisdictional error." United States v. King, 28 M.J. 397, 399 (C.M.A. 1989). Indeed, this Court has repeatedly opined that errors in the referral process are not jurisdictional. In King, we held that the trial of an accused by a court-martial panel other than the one to which the case had been referred was nonjurisdictional error. Id. In United States v. Kohut, 44 M.J. 245, 250 (C.A.A.F. 1996), this Court found nonjurisdictional error in the trial of a case by court-martial without approval of the Judge Advocate General after the same case had been previously tried by the state. In United States v. Hayward, 47 M.J. 381, 383 (C.A.A.F. 1998), we held that the post-arraignment referral of a second charge was nonjurisdictional error. Finally, this Court found nonjurisdictional error in the convening authority's failure to

forward charges against the accused to the next higher level of command when that convening authority was an accuser, and therefore prohibited from convening the court-martial. United States v. Jeter, 35 M.J. 442, 446 (C.M.A. 1992); see United States v. Tittel, 53 M.J. 313, 314 (C.A.A.F. 2000); United States v. Shiner, 40 M.J. 155, 157 (C.M.A. 1994).

Importantly, errors which are nonjurisdictional, such as defective referrals, "are normally waived when they are not timely raised at trial." United States v. Joseph, 11 M.J. 333, 335 (C.M.A. 1981). Moreover, a guilty plea "waives all nonjurisdictional defects in all earlier stages of the proceedings against an accused." United States v. Lopez, 20 C.M.A. 76, 78, 42 C.M.R. 268, 270 (1970). Because Appellant in this case failed to object at trial, and in fact pled guilty to the lesser-included offense after the initial defective referral, he waived the error and, having done so, must demonstrate prejudice to prevail on appeal. Hayward, 47 M.J. at 383.

In United States v. Wilkins, 29 M.J. 421 (C.M.A. 1990), the appellant was charged with specifications of larceny, but under the terms of a pretrial agreement pleaded guilty to receiving stolen property. Although the convening authority accepted the plea offer, he did not order the stolen property charges referred to trial. The lower court found the court-martial did

2

not have jurisdiction to find the appellant guilty of receiving stolen property "because no such charge had been properly referred to the court-martial for trial." Id. at 423. This Court reversed, holding that the convening authority's entry into the pretrial agreement was the "functional equivalent of an order by the convening authority that the charges be referred to the court-martial for trial." Id. at 424.

> The convening authority, on the one hand, and [the appellant] and his defense counsel, on the other, were aware that the court-martial could not enter the findings of guilty contemplated by the pretrial agreement unless the court-martial had jurisdiction over the receiving charge, and it could not have jurisdiction unless that charge was referred to the court-martial by the convening authority. Implicit in the convening authority's personal decision to enter into the pretrial agreement was his personal decision that the receiving charge be referred to the general court-martial where the larceny charges were pending.

Id. The Court noted that the appellant had waived any post-trial claim of procedural irregularity, which in any event had failed to cause him prejudice: "Indeed, the usual court-martial procedure was modified by and for the benefit of the accused; and under such circumstances, he cannot complain after trial." Id. at 425 (emphasis added).

Applying the Wilkins prejudice analysis to the case at bar, it is clear that Appellant suffered no harm whatsoever by the convening authority's derivatively defective referral of the lesser-included charge. The majority observes that because it

3

was never formally referred, the lesser-included "charge" of negligently hazarding a vessel never achieved the status of an independent charge, and therefore inherited the defectiveness of the original referral. Even assuming defectiveness transferred in this manner, we must acknowledge that the transfer occurred by and for the benefit of Appellant, through the pretrial agreement. In other words, the convening authority's initial improper referral of charges for a capital offense to a special court-martial was, through the pretrial agreement, "modified by and for the benefit of the accused" to secure conviction of a non-capital, and therefore much less severe, offense. Having reaped the great benefit of his own chosen bargain, Appellant cannot now complain that the charge originated defectively.

The majority relies upon United States v. Bancroft, 3 C.M.A. 3, 11 C.M.R. 3 (1953), in which this Court held that a special court-martial lacked jurisdiction over a charge of sleeping on post in the time of war, due to the convening authority's failure to comply with prescribed requirements that would vest it with jurisdiction over a nonmandatory capital offense. In my view, Bancroft should not control this Court's decision for two reasons. First, the more recent trend by this Court, embodied in King, is to treat referral defects as waivable, nonjurisdictional error. Moreover, the charges in Bancroft were referred for, and the accused convicted of, a

4

capital offense.  By contrast, in the present case, the derivatively defective referral secured Appellant's conviction of a non-capital offense.  Thus, far from being harmed by the convening authority's error in this case, Appellant benefited from the resulting conviction of a much less severe offense.

Accordingly, I would hold that the convening authority's defective referral in this case was waivable, nonjurisdictional error, the ultimate results of which benefited Appellant.  Given the clear absence of prejudice, I would affirm the decision of the lower court.