UNITED STATES, Appellee

v.

Dustin M. HART, Airman First Class
U.S. Air Force, Appellant

No. 07-0247

Crim. App. No. 36253

United States Court of Appeals for the Armed Forces

Argued January 7, 2008

Decided May 14, 2008

ERDMANN, J., delivered the opinion of the court, in which BAKER
and RYAN, JJ., joined.  EFFRON, C.J., filed a dissent, in which
STUCKY, J., joined.

Counsel

For Appellant:  Major Shannon A. Bennett (argued); Lieutenant
Colonel Mark R. Strickland (on brief); Captain Christopher L.
Ferretti.

For Appellee:  Captain Jason M. Kellhofer (argued); Colonel
Gerald R. Bruce, Colonel George F. May, and Major Matthew S.
Ward (on brief).

Military Judge:  Kevin P. Koehler


**This opinion is subject to revision before final publication.**

United States v. Hart, No. 07-0247/AF

Judge ERDMANN delivered the opinion of the court.

Two days after Airman First Class Dustin M. Hart received his Discharge from Active Duty (DD Form 214), but before he received separation pay, his command stopped processing the computation of his final pay and revoked his DD Form 214. Several weeks later various drug charges were preferred against him. We granted review of this case to consider whether the charge and specifications must be dismissed for lack of personal jurisdiction. 65 M.J. 322 (C.A.A.F. 2007).

Pursuant to 10 U.S.C. § 1168(a) (2000), a servicemember may not be discharged from active duty until his discharge certificate "and his final pay or a substantial part of that pay, are ready for delivery to him." We agree with the military judge and the United States Air Force Court of Criminal Appeals which concluded that Hart's final pay, or a substantial portion thereof, was not ready for delivery. See United States v. Hart, No. ACM 36253, 2006 CCA LEXIS 314, at *11-*12, 2006 WL 3513949, at *4 (A.F. Ct. Crim. App. Nov. 30, 2006) (unpublished). Accordingly, the discharge action was not completed and court-martial jurisdiction existed. We affirm.

BACKGROUND

Hart confessed to various drug offenses during an interview with the Air Force Office of Special Investigations (AFOSI) on January 2, 2004. Following his confession he worked with AFOSI

2

for several months as a confidential informant gathering information about illegal drug use by active duty members. During this time no charges were preferred against him. Unbeknownst to AFOSI, on January 8, 2004, a Medical Evaluation Board found Hart physically unfit for military service. Officials from the Office of the Secretary of the Air Force notified the separations section of his unit that he was to be administratively separated with a disability discharge.

Notwithstanding a memorandum from the base's legal office requesting that he "be placed on administrative hold for 120 days pending an administrative proceeding," Hart was instructed to begin outprocessing from the Air Force.[1] The separations section gave him a Request and Authorization for Separation for Discharge (AF Form 100) to show that he was being outprocessed for a disability discharge as well as an outprocessing checklist. As part of the outprocessing procedure he was required to checkout with the finance section. That office required completion of a separate "finance" checklist and a final interview with finance personnel.

After the checklists were completed, Hart met with a finance technician on February 24, 2004, and provided the information necessary for the calculation of his final pay.

---

[1] None of the personnel in the separations section were aware of the legal office memorandum until after Hart received his DD Form 214.

That same day, Hart's section commander cleared Hart for final outprocessing.[2] Two days later, the initial calculation of Hart's separation pay was entered into the computer system of the Defense Finance and Accounting System (DFAS). The military judge found this entry to be a "snapshot" of the projected separation settlement based upon the information in the DFAS computer at the time and "not a final pay calculation." On March 3, 2004, the separations section issued Hart his DD Form 214 reflecting that date as the effective date of separation.

On March 5, 2004, Hart's squadron commander, AFOSI, and the legal office learned that Hart had received his DD Form 214. The legal office directed the finance office not to take any further action in calculating Hart's final pay. Hart's squadron commander issued a memorandum to the support squadron asking that the DD Form 214 be revoked and that Hart be retained on active duty "due to his involvement with a number of serious offenses under the Uniform Code of Military Justice." Hart was reported absent without leave on March 9, 2004, and arrested by civilian authorities on March 18, 2004. He was returned to military control and charges were preferred against him on March 23, 2004.

---

[2] Hart's section commander was aware that Hart had been working with AFOSI, but was unaware that he was personally implicated in criminal activity.

United States v. Hart, No. 07-0247/AF

Prior to trial, Hart moved to dismiss the charges based upon lack of personal jurisdiction. The military judge conducted a hearing on the motion and found, among other things, that there was never a final calculation of pay. At the time the pay process was halted, certain steps in the process of calculating final pay required by the DFAS manual, DFAS-DEM 7073-1, ch. 52 (Jan. 15, 1998), had not been accomplished. In light of these findings the military judge concluded:

> I find that the government has proven by a preponderance of evidence that they have personal jurisdiction in this case, and the Accused can be tried by court-martial. The Accused was never finally discharged from active duty service in the United States Air Force, as there was never a final accounting of pay -- his final pay, or a substantial portion thereof was never made ready for delivery to him as required by 10 U.S.C. § 1168(a) and military case law. The military retains jurisdiction over the Accused.

Hart filed a writ of mandamus with the lower court, which was denied. He subsequently filed a writ-appeal with this court, which was denied without prejudice. 60 M.J. 434 (C.A.A.F. 2004). At trial, Hart entered guilty pleas and was convicted of wrongful use, possession and distribution of various controlled substances.[3] Following his conviction, the Court of Criminal Appeals considered the question of

---

[3] Hart was convicted of wrongful use of marijuana, Diazepam, and Alprazolam, wrongful possession of Diazepam and wrongful distribution of Alprazolam, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000).

jurisdiction in the ordinary course of appeal and agreed with the military judge that neither "'final pay' nor a 'substantial part of that pay' were ready for delivery within the meaning of 10 U.S.C. § 1168(a)."  Hart, 2006 CCA LEXIS 314, at *11-*12, 2006 WL 3513949, at *4.  The lower court concluded that "[a]bsent a final accounting of pay, the appellant's early discharge was not legally effectuated and he remained subject to military court-martial jurisdiction."  Id. at *12, 2006 WL 3513949, at *4.

ANALYSIS

Under Article 2(a)(1), UCMJ, "[m]embers of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment" are subject to court-martial jurisdiction.  10 U.S.C. § 802(a)(1) (2000).  As this court recognized long ago, "It is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent same saving circumstance or statutory authorization."  United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985); see also United States v. King, 42 M.J. 79, 80 (C.A.A.F. 1995) (quoting Howard, 20 M.J. at 354).

This case requires us to determine whether a valid discharge occurred which would deprive the Air Force of *in personam* jurisdiction over Hart.  The UCMJ itself does not

6

define the exact point in time when discharge occurs, but for nearly twenty years, this court has turned to 10 U.S.C. §§ 1168(a) and 1169 (2000), a personnel statute, for guidance as to what is required to effectuate discharge.  See, e.g., United States v. Harmon, 63 M.J. 98, 101-02 (C.A.A.F. 2006); United States v. Melanson, 53 M.J. 1, 2 (C.A.A.F. 2000); United States v. Keel, 48 M.J. 431, 432 (C.A.A.F. 1998);  King, 42 M.J. at 80; King, 27 M.J. at 329; see also Howard, 20 M.J. at 354 (noting that "[d]ischarges are governed by 10 U.S.C. § 1168(a)").  We do so here as well. [4]

Section 1168(a), which governs "Discharge or release from active duty:  limitations," states as follows:

> A member of an armed force may not be discharged or
> released from active duty until his discharge

---

[4] The dissent suggests that the majority opinion is ignoring the settled precedent of this court while the dissent follows such precedent.  United States v. Hart, __ M.J. __ (5-11) (C.A.A.F. 2008) (Effron, C.J., with whom Stucky, J., joins, dissenting). In fact, just the opposite is true.  Despite the representations in the dissent, this court has turned to 10 U.S.C. § 1168(a) since 1985 to assist in determining whether a discharge has occurred for UCMJ purposes.  See United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985).  The dissent would have the date contained in the DD Form 214 determine the effective date of discharge without regard to the criteria found in 10 U.S.C. § 1168(a) or United States v. King, 27 M.J. 327, 329 (C.M.A. 1989), which the dissent would overrule *sub silentio*.  There are no prior decisions of this court that have held that the date on the DD Form 214 determines the effective date of discharge for UCMJ purposes and the dissent cites none.  Nor has the application of 10 U.S.C. § 1168(a) ever been limited by this court to only those situations where "the unsettled state of the record requires consideration of multiple factors."  Hart, __ M.J. at __ (9) (Effron, C.J., with whom Stucky, J., joins, dissenting).

> certificate or certificate of release from active
> duty, respectively, and his final pay or a substantial
> part of that pay, are ready for delivery to him or his
> next of kin or legal representative.

10 U.S.C. § 1168(a).  Section 1169, provides further:

> No regular enlisted member of an armed force may be
> discharged before his term of service expires, except--
>
> (1)  as prescribed by the Secretary concerned;
>
> (2)  by sentence of a general or special court martial; or
>
> (3)  as otherwise provided by law.

10 U.S.C. § 1169.  In King, this court reasoned:

> We read these statutes as generally requiring that
> three elements be satisfied to accomplish an early
> discharge.  First, there must be a delivery of a valid
> discharge certificate. . . .  Second, there must be a
> final accounting of pay made.  This is an explicit
> command set forth by Congress in 10 U.S.C. § 1168(a).
> . . .  Third, appellant must undergo the "clearing"
> process required under appropriate service regulations
> to separate him from military service.

27 M.J. at 329 (citations omitted).

The jurisdictional rulings of the military judge and the Court of Criminal Appeals hinge on the determination that there was no final accounting of pay.  That is, Hart was not effectively discharged because the criteria under § 1168(a) that "his final pay or a substantial part of that pay, are ready for delivery to him" were not met.  Hart argues that neither 10 U.S.C. § 1168(a) nor King define or address the meaning of "final accounting of pay" or "ready for delivery."  He further argues that since the finance office had all the information

8

they needed to compute the final pay, the criteria of § 1168(a) were satisfied once his "clearing process" was complete. The Government maintains that on the undisputed facts of the case, Hart's final pay had not undergone a final accounting and was not ready for delivery. Therefore, the Government urges that under 10 U.S.C. § 1168(a), Hart's discharge process was not completed and the Air Force retained court-martial jurisdiction over him.

"When an accused contests personal jurisdiction on appeal, we review that question of law *de novo*, accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record." Melanson, 53 M.J. at 2. Here, neither party claims that the factual findings of the military judge are clearly erroneous. Accordingly, we accept the military judge's factual findings.

Our review of the military judge's factual findings compels the conclusion that neither final pay nor a substantial part of that pay were ready for delivery within the meaning of the plain language of 10 U.S.C. § 1168(a). We therefore reject Hart's contention that the facts here are sufficient to establish these essential criteria for discharge.

Based on the DFAS manual and the procedures of the base finance office, the military judge found that the following

steps are required under DFAS regulations to calculate final

pay:

(1)  DFAS generates an initial preliminary calculation of final
pay;

(2)  A finance technician manually calculates the final pay on a
spreadsheet, balancing moneys owed to the member with debts owed
by the member;

(3)  The finance technician reconciles any discrepancy between
the DFAS calculation and the manual calculation;

(4)  The technician completes a payment authorization request;

(5)  The technician forwards the member's file along with a
payment request to the noncommissioned officer in charge of the
unit's customer service, who reviews the technician's
calculations;

(6)  The noncommissioned officer in charge, who is the only one
who can approve payment, forwards payment authorization to a
separate section of the finance section for quality examination;

(7)  A technician forwards disbursement authorization to DFAS.

The military judge found that "only the initial DFAS,

'snap-shot' calculation had been accomplished."  As such,

critical calculations, reconciliations, and authorizations of

final pay pursuant to DFAS regulations had not yet started.  The

lower court was correct to conclude that DFAS could not have

issued separation pay to Hart under these circumstances so

neither "'final pay' nor a 'substantial part of that pay' were

ready for delivery within the meaning of 10 U.S.C. § 1168(a)."

Hart, 2006 CCA LEXIS 314, at *11-*12, 2006 WL 3513949, at *4.

The military judge also found that there was no evidence

that the finance personnel were "deliberately trying to slow

10

down the processing of [Hart's] pay."  Rather, "[i]t was a

normal processing of accounts based on workload and manning."

The military judge found that this finance office had a twenty-

day window to manually compute a person's pay and forward that

computation to DFAS for disbursement.  The payment process was

halted at the command's request before the twenty days expired.[5]

The language of 10 U.S.C § 1168(a) setting limitations on

discharge or release from active duty plainly precludes

discharge unless "final pay or a substantial part of that pay"

is "ready for delivery."  On the facts of this case, these

criteria were not fulfilled.  Accordingly, Hart was not

---

[5] This case does not involve any delay in the processing of
Hart's separation pay.  We have not had occasion to address the
jurisdictional effects if payment were not accomplished within a
reasonable time frame established by applicable regulation for
completion of the payment process.  The dissent's criticism that
as a result of our ruling members will be held on active duty
indefinitely sounds a false alarm and is unwarranted for several
reasons.  Hart, __ M.J. at __ (5-6) (Effron, C.J., with whom
Stucky, J., joins, dissenting).  First, as just noted, we have
not addressed the case where DFAS has acted outside its own
regulations, which provide a time certain for delivery of a
final accounting of pay.  Second, contrary to the dissent's
suggestion, this is not new law.  We have relied on 10 U.S.C. §
1168(a) for guidance in determining the moment of discharge for
purposes of UCMJ jurisdiction since 1985.  See Howard, 20 M.J.
at 354.  Third, we are, of course, only addressing matters of
UCMJ jurisdiction.  Finally, to the extent the dissent's
argument is founded in legal policy, it ignores the sound public
policy reasons why the public's interest as well as the
interests of military members and their dependents may be better
served during the transition from military to civilian life by a
system that allows flexibility in accounting for moneys due as
well as in providing for health and other coverage during
transitional travel.

United States v. Hart, No. 07-0247/AF

effectively discharged and remained subject to court-martial jurisdiction pursuant to Article 2(a)(1), UCMJ.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Hart, No. 07-0247/AF

EFFRON, Chief Judge, with whom STUCKY, Judge, joins (dissenting):

The Air Force discharged Appellant and did not have authority to revoke his discharge.  The cases cited by the majority are informative regarding the factors that may be considered in evaluating jurisdictional issues, but those cases do not resolve the question presented today regarding the relationship between court-martial jurisdiction and the personnel management provisions of 10 U.S.C. § 1168 (2000).  Accordingly, I respectfully dissent from the conclusion of the majority opinion that the court-martial had personal jurisdiction in the present case.

Discharge and status

On January 23, 2004, the Air Force Personnel Center ordered the discharge of Airman First Class Dustin Hart by reason of physical disability, effective March 3, 2004.  On March 3, 2004, the Air Force discharged Hart, changing his status from military to civilian.

At the time of discharge, the Air Force provided Hart with an official record of the action, DD Form 214 ("Certificate of Release or Discharge from Active Duty").  Consistent with the direction from the Office of the Secretary of the Air Force, the DD Form 214 documenting the separation described the action as a

"discharge" and set forth the reason as "disability."  The DD
Form 214 listed the separation date as March 3, 2004.

Hart's discharge severed his connection with the armed
forces, and terminated his status as a person subject to the
Uniform Code of Military Justice (UCMJ).  Following his
discharge, Hart did not fall within the categories of persons
subject to military jurisdiction based upon their ongoing
relationship with the armed forces.  See Article 2, UCMJ, 10
U.S.C. § 802 (2000).  Likewise, he did not fall within the
categories of persons expressly designated by Congress as
subject to military justice jurisdiction following discharge.
See Article 3, UCMJ, 10 U.S.C. § 803 (2000).

Post-discharge court-martial charges

In the months preceding his discharge, Hart had served as a
confidential informant for the Air Force Office of Special
Investigations (OSI), gathering information about illegal drug
use by other active-duty servicemembers.  OSI had recruited him
in January 2004 during an investigation into his illegal drug
activity.  In the course of this investigation, Hart admitted to
various drug offenses, but no charges were preferred against him
prior to his discharge.  Instead, the Air Force relied on Hart
as an undercover informant.  At the time of his discharge, OSI

planned to utilize Hart's assistance in an undercover drug
operation scheduled for March 6-8, 2004.

After his return to civilian life, Hart notified an OSI
agent that he was no longer a member of the Air Force and that
he would not engage in further work as an OSI informant.  OSI,
which had been unaware of the discharge proceedings, informed
the base legal office, which in turn informed Hart's former
command.  On March 5, 2004, the acting commander requested that
the support squadron revoke the discharge action.  On March 23,
2004, Hart was returned to military control and the command
preferred charges against him for pre-discharge drug offenses.
The charges preferred against Hart all involve offenses that
constitute violations of generally applicable federal law.  See
21 U.S.C. §§ 841, 844 (2000).  Although it appears that Hart
could have been prosecuted in a federal civilian court on these
charges, the record contains no indication that the Air Force
referred the allegations for prosecution by civilian
authorities.

The Air Force, like the other armed forces, has a procedure
for placing an administrative "hold" on servicemembers facing
possible courts-martial to preclude discharge prior to the
disposition of offenses under investigation.  See Rule for
Courts-Martial (R.C.M.) 202(c)(1); Dep't of the Air Force,
Instr. 36-3208, Administrative Separation of Airmen para. 1.14

3

United States v. Hart, No. 07-0247/AF

(July 9, 2004).  Although the record in the present case reflects discussion of a hold by various officials prior to Hart's discharge, the military judge did not reach a conclusion as to whether a legally effective hold had been placed on Hart. Accordingly, the present appeal does not involve the question of whether Hart's discharge was issued contrary to a valid hold, rendering the discharge void or voidable.  See, e.g., Smith v. Vanderbush, 47 M.J. 56, 58 (C.A.A.F. 1997).

Post-discharge analysis of pay and allowances

In the present case, the command purported to revoke Hart's discharge, relying on the command's failure to comply with 10 U.S.C. § 1168(a), which provides that a "member of an armed force may not be discharged or released from active duty until . . . his final pay or a substantial part of that pay . . . [is] ready for delivery to him."  Section 1168 is a personnel management statute designed to protect servicemembers and their families from the adverse financial consequences of premature separation.  See United States v. Keels, 48 M.J. 431, 432 (C.A.A.F. 1998).  The pertinent legislation originated in World War II as part of the Servicemen's Readjustment Act of 1944, Pub. L. No. 346, § 104, 58 Stat. 284, 285 (1944).  This legislation, commonly known as the "G.I. Bill of Rights," provided "Federal Government aid for the readjustment in

4

civilian life of returning World War II veterans." 58 Stat.
284. Among other provisions, the Act offered federal aid to
veterans in areas such as education, home ownership, and
unemployment insurance. Id. at 287-300. This discharge
provision ensured the efficient administration of disability
claims and the timely discharge of servicemembers. See H.R.
Rep. No. 78-1418, at 5-6 (1944). Nearly twenty years later, the
provision was recodified at 10 U.S.C. § 1168. See Pub. L. No.
87-651, § 106(b), 76 Stat. 506, 508 (1962); S. Rep. No. 87-1876
(1962), as reprinted in 1962 U.S.C.C.A.N. 2456, 2458-59.
Section 1168 does not address jurisdiction under the UCMJ; nor
does the statute require the government to revoke a discharge
when the government subsequently discovers that it has failed to
perform its obligation to ensure timely accounting of military
pay for a servicemember facing a discharge.

Section 1168 and status

Notwithstanding the language and purpose of § 1168, the
majority opinion holds that if the government fails to comply
with § 1168, the statute "precludes discharge" of a
servicemember. United States v. Hart, __ M.J. __ (11) (C.A.A.F.
2008). Under the majority opinion's interpretation of § 1168,
the effective date of separation set forth in a discharge
document, such as a DD-214, must be disregarded if personnel in

5

the finance office have overlooked or failed to make sufficient progress in calculating a departing servicemember's pay at the time of separation.  Similarly, under the majority opinion's approach, if military authorities provide a person with a DD-214 and inform that person on the effective date that the individual is no longer on active duty, those actions have no effect on the member's military status.  Despite the effective date provided in the discharge document, the person would remain on active duty until an uncertain future time, the date on which his or her "final pay or a substantial part of that pay" becomes "ready for delivery."

The majority opinion would eliminate the ability of servicemembers and the government to rely on the certainty provided by the effective date set forth in a discharge document.  The effective date of discharge is critical to the termination of a person's entitlement to pay, allowances, and costly military benefits, such as medical care.  In addition, the effective date is critical to a person's availability to military orders, including deployment.  Recipients of a DD-214 who had returned to civilian life could be ordered to active duty on the theory that they had never been "effectively discharged" from the armed forces.  Hart, __ M.J. at __ (12).

United States v. Hart, No. 07-0247/AF

Pay administration and corrective action

Military justice jurisdiction, while important, pales in significance to the other aspects of military life to which the distinction between military and civilian status is crucial. The majority opinion would remove the certainty of an effective date on the DD-214, which has spawned relatively little litigation, and replace it with the necessity of determining on a case-by-case basis the date on which an individual's pay was "ready for delivery."  This uncertainty is further magnified by the fact that each year, the Defense Finance and Accounting Service (DFAS) must accomplish millions of actions involving basic pay, a complex array of allowances, travel reimbursements, and a host of other unrelated financial transactions.  See Defense Finance and Accounting Service, http://www.dfas.mil/about.html (last visited May 7, 2008). Although DFAS undoubtedly endeavors to accomplish these myriad tasks in a timely fashion, there is a significant potential for delays and mistakes, as reflected in the lengthy record of the finance proceedings set forth in the present case.  Under the interpretation of § 1168 set forth in the majority opinion, an administrative deficiency in the computation of a member's final pay will render the discharge ineffective.  Aside from disrupting a member's transition to civilian life, such an interpretation carries the potential for extensive litigation

7

about military pay and benefits, with the possibility of significant costs to the government.

Section 1168 does not require such a result. If the government fails in its obligation to provide a departing servicemember with an important benefit for transition to civilian life, the error may be remedied by completing the required paperwork and making the requisite payment to the servicemember. If the result is not satisfactory, the member can apply to the Board for Correction of Military Records, see 10 U.S.C. § 1552 (2000), or seek relief before the United States Court of Federal Claims, see 28 U.S.C. § 1491 (2000).

Section 1168 does not contemplate, much less require, that the government inform the individual that the discharge is invalid, that the individual abandon civilian employment and the other attributes of civilian life, or that failure to repair to duty post-haste will constitute a violation of the UCMJ. See United States v. Howard, 20 M.J. 353, 354 (C.M.A. 1985) (describing the purpose and effect of § 1168); Hamon v. United States, 10 Cl. Ct. 681, 683 (1986) (noting that the plain language of § 1168 and its legislative history "indicate concern not with actual receipt of discharge documents but rather with facilitating veterans' return to civilian life"); In re Shattuck, 63 Comp. Gen. 251, 252 (1984) (failure to have a

member's final pay ready for delivery did not invalidate an otherwise proper discharge).

Section 1168 and jurisdiction

To the extent that our Court has cited § 1168 in jurisdictional cases, we have done so where the unsettled state of the record requires consideration of multiple factors in determining whether an individual remained in military status. United States v. King, 27 M.J. 327, 328 (C.M.A. 1989), for example, involved a servicemember who requested an early discharge for purposes of reenlistment. At the reenlistment ceremony, King was given a discharge certificate. Id. Upon the suggestion that he was now a civilian, King refused to complete the reenlistment ceremony, retrieved his personal effects, and departed. Id. Our Court had no trouble concluding that an early discharge for purposes of reenlistment does not return a servicemember to civilian status. See id. at 328-29 (citing United States v. Clardy, 13 M.J. 308 (C.M.A. 1982); United States v. Johnson, 6 C.M.A. 320, 20 C.M.R. 36 (1955)). We cited 10 U.S.C. § 1168(a) and the related provisions of 10 U.S.C. § 1169 as "generally requiring" the following steps to accomplish an early discharge: (1) delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) completion of an administrative clearing process. Id. at 329 (observing

9

that there was no evidence of any accounting of pay under the facts of the case). In noting that the discharge statutes "generally" require three steps, the opinion sought to describe the general practice applicable in most instances, rather than set forth an absolute rule. See id.; see also Merriam-Webster's Collegiate Dictionary 485 (10th ed. 1998) (defining "generally" to include "usually" and "in disregard of specific instances and with regard to an overall picture").

The present appeal does not involve any of the past circumstances in which the delivery of a discharge certificate failed to terminate military status, such as fraudulent procurement of a discharge, Wickham v. Hall, 12 M.J. 145, 150 (C.M.A. 1981); apprehension for fraudulent amendment of discharge orders prior to separation, United States v. King, 42 M.J. 79, 80 (C.A.A.F. 1995); continuous military service in the event of a discharge for purposes of reenlistment, King, 27 M.J. at 328; delivery of a discharge certificate before the time of day on which the discharge became effective, United States v. Melanson, 53 M.J. 1, 4 (C.A.A.F. 2000); or placement of a legal hold prior to the time of day on which the discharge became effective, United States v. Harmon, 63 M.J. 98, 103 (C.A.A.F. 2006).

Instead, we have a case in which the discharge was ordered at the highest level within the military department, the

10

servicemember cooperated in the separation process with no allegation of fraud on his part, the local command did not place a legal hold on the servicemember, the local command issued a discharge certificate to the servicemember, and the command did not seek to revoke the discharge until several days after the certificate was issued.  Under these circumstances, Hart's military status terminated on the date that the command delivered the discharge certificate to him.  See Howard, 20 M.J. at 354 (citing United States v. Scott, 11 C.M.A. 646, 648, 29 C.M.R. 462, 464 (1960); William Winthrop, Military Law and Precedents 548 (2d ed. 1920 reprint)).  As a result, the military judge erred when he rejected the defense motion to dismiss the charges for lack of personal jurisdiction.