# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

**UNITED STATES**

**v.**

**Staff Sergeant ANTHONY M. FLACKUS**
**United States Air Force**

**ACM 38847**

**15 November 2016**

Sentence adjudged 28 April 2015 by GCM convened at McConnell Air Force Base, Kansas. Military Judge: Mark W. Milam (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 300 days, and reduction to E-1.

Appellate Counsel for Appellant: Major Lauren A. Shure.

Appellate Counsel for the United States: Gerald R. Bruce, Esquire.

Before

MAYBERRY, SPERANZA, and JOHNSON
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

JOHNSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty in accordance with his pleas of one specification each of absence without leave, wrongfully distributing marijuana, wrongfully using marijuana on divers occasions, wrongfully using cocaine, and wrongfully using dextromethamphetamine on divers occasions, in violation of Articles 86 and 112a, UCMJ, 10 U.S.C. §§ 886 and 912a.[1] The

---

[1] Pursuant to his pretrial agreement with the convening authority, Appellant pleaded not guilty to one specification of desertion, one specification of sexual assault, two specifications of abusive sexual contact, and one specification of soliciting prostitution, in violation of Articles 85, 120, and 134, UCMJ, 10 U.S.C. §§ 885, 920, and 934. The charges

court-martial sentenced Appellant to a bad-conduct discharge, confinement for 300 days, and reduction to E-1. The convening authority approved the sentence as adjudged, but waived the mandatory forfeitures for the benefit of Appellant's child.

Before us, Appellant contends Air Force authorities unlawfully increased his punishment after his release from confinement, and he seeks to have his bad-conduct discharge set aside. In addition, although not raised by the parties, we address a facially unreasonable delay in the post-trial processing of Appellant's case.[2] Finding no relief is warranted on either issue, we affirm the findings and sentence as approved by the convening authority.

*Background*

From September to December 2014, Appellant engaged in significant drug abuse, to include smoking marijuana on numerous occasions, selling marijuana to his estranged wife, and wrongfully using cocaine and dextromethamphetamine. Then on 16 December 2016, Appellant failed to report for duty at his unit at McConnell Air Force Base, Kansas. After his superiors failed to locate him, they reported his absence to Security Forces and the Air Force Office of Special Investigations (AFOSI) detachment at the base. With civilian police assistance, members of his unit then accessed Appellant's off-base quarters. Appellant was not there and they discovered most of his clothing and toiletries were gone; however, his uniforms were still there. As a result, Security Forces initiated a "Be On the Lookout" (BOLO) report in the Defense Biometric Identification System. In addition, the Air Force Personnel Center changed Appellant's duty status to "AWOL [Absent Without Leave]/deserter," and AFOSI published a federal arrest warrant for Appellant. Appellant remained AWOL in the local area until he was apprehended by civilian police and turned over to AFOSI on 19 December 2014.

Appellant was arraigned on 23 March 2015, and his court-martial concluded on 28 April 2015. As noted above, the military judge sentenced Appellant to a bad-conduct

---

and specifications of sexual assault, abusive sexual contact, and solicitation of prostitution under Articles 120 and 134 were withdrawn and dismissed. The military judge found Appellant not guilty of the charge and specification of desertion under Article 85 after Appellant pled guilty to the lesser included offense of absence without leave under Article 86, UCMJ, 10 U.S.C. § 886.

[2] This court specified the following issue for the parties to brief: DOES THE PRESUMPTIVELY UNREASONABLE DELAY BETWEEN THE CONVENING AUTHORITY'S ACTION AND THE DOCKETING OF APPELLANT'S RECORD OF TRIAL WITH THIS COURT CONSTITUTE A VIOLATION OF APPELLANT'S DUE PROCESS RIGHT TO SPEEDY POST-TRIAL AND APPELLATE REVIEW OR OTHERWISE WARRANT RELIEF FROM THIS COURT? *UNITED STATES V. MORENO*, 63 M.J. 129, 142 (C.A.A.F. 2006) (PRESUMPTION OF UNREASONABLE DELAY TRIGGERING FOUR-FACTOR ANALYSIS WHERE RECORD OF TRIAL IS NOT DOCKETED WITH THE SERVICE COURT WITHIN THIRTY DAYS OF THE CONVENING AUTHORITY'S ACTION); *UNITED STATES V. TARDIF*, 57 M.J. 219, 224 (C.A.A.F. 2002) (COURTS OF CRIMINAL APPEALS HAVE AUTHORITY UNDER ARTICLE 66(C), UCMJ, TO GRANT RELIEF FOR EXCESSIVE POST-TRIAL DELAY WITHOUT FINDING A DUE PROCESS VIOLATION OR ACTUAL PREJUDICE TO THE APPELLANT).

discharge, confinement for 300 days, and reduction to E-1. Appellant received 131 days of pretrial confinement credit against this sentence. In October 2015, after his release from confinement, Appellant traveled to Cannon Air Force Base, New Mexico, where his fiancée was serving on active duty in the Air Force. When Appellant attempted to enter the base, he was detained by Security Forces because the BOLO initiated in December 2014 was still in effect. After several hours, Security Forces were able to clarify Appellant's status and he was released.

On 8 June 2016, Appellant and his fiancée stayed in on-base lodging at McConnell Air Force Base in order to attend a child support hearing in a local civilian court regarding Appellant's son. After the hearing on 9 June 2016, Appellant, accompanied by his fiancée, went to the local AFOSI office in an effort to have the BOLO removed and to have Appellant's name and image removed from the list of Air Force fugitives on the AFOSI web page. The visit did not proceed as Appellant had hoped. The AFOSI agents advised Appellant that their detachment could not change the BOLO or the list of Air Force fugitives. In addition, the agents expressed their view that Appellant should have received greater punishment in his court-martial, and they asked him questions about his mental health and opined that he should not be getting paid or receiving mental health medical benefits. Further, they asked him and his fiancée for personal information such as their home address and her social security number; Appellant's fiancée was no longer on active duty at the time. The agents also presented him with an order signed by Appellant's former commander that barred Appellant from McConnell Air Force Base for a period of two years, effective the date of his discharge, with an exception for medical treatment. The order was dated the same day as Appellant's visit to AFOSI, 9 June 2016. The agents directed Appellant to sign the order acknowledging receipt and—notwithstanding the specific language of the order indicating it was effective only upon his discharge— informed him he would have to leave the base immediately. This forced Appellant and his fiancée to check out of base lodging late and forfeit their payment for that night's stay. Finally, Appellant's former spouse called him later that day and informed him that AFOSI agents called her and told her Appellant was receiving more money from the Air Force than she knew of previously.

Additional facts are included as necessary in the discussion below.

*Increase in Appellant's Punishment*

Appellant contends that the following events impermissibly increased his punishment as adjudged at his court-martial: temporary detention by Security Forces at Cannon Air Force Base in October 2015; continued presence on AFOSI's list of Air Force fugitives; harassment by AFOSI agents at McConnell Air Force Base on 9 June 2016; and the 9 June 2016 order not to re-enter McConnell Air Force Base. He argues these events have interfered with his entitlement to access benefits and services located on McConnell Air Force Base pending his discharge, effectively amounting to a *de facto* premature

ACM 38847

execution of his punitive discharge, and he claims these events have caused him severe mental distress. As a result, he requests this court set aside the bad-conduct discharge.

The Government responds that this court has no authority to review the various actions Appellant complains of because these actions are not part of the findings or sentence approved by the convening authority. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c). The Government cites *Clinton v. Goldsmith*, 526 U.S. 529 (1999), comparing the barment order served on Appellant to the Air Force's plan to drop Goldsmith from the rolls, and contending both are beyond the jurisdiction of the military appellate courts because they are merely administrative actions.

Article 66(c) provides in part:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. . . .

10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (C.A.A.F. 2007) (citations omitted); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). We review jurisdictional questions de novo. *United States v. Davis*, 63 M.J. 171, 176 (C.A.A.F. 2006) (citing *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000)).

As an initial matter, the Government's comparison of the instant case with the analysis in *Goldsmith* is not entirely apt. There, our superior court relied on the All Writs Act, 28 U.S.C.S. § 1651(a), to enjoin the President and other executive branch officers from dropping Goldsmith from the rolls of the Air Force, not as part of a punitive discharge imposed by his court-martial, but as an administrative consequence of his conviction and sentence to confinement. *Goldsmith*, 526 U.S. at 532–33. Reversing our superior court, the Supreme Court noted that our superior court's jurisdiction was limited to acting only with respect to court-martial findings and sentences acted on by the convening authority and reviewed by the Courts of Criminal Appeals. *Id.* at 534 (citing 10 U.S.C. § 867(c)) (citation omitted). The Court rejected our superior court's reliance on the All Writs Act because its order was not "in aid of" our superior court's existing jurisdiction, nor was it "necessary" or "appropriate" in light of the alternative remedies available to Goldsmith for the administrative actions he complained of. *Id.* at 536–38.

There are significant distinctions between the situation in *Goldsmith* and the present case. First, Appellant does not ask this court to enjoin an administrative government action collateral to his court-martial's findings and sentence, as our superior court did in *Goldsmith*. Rather, he asks this court for relief in the form of action on the sentence approved by the convening authority in a case presently before this court. This is exactly this court's function under Article 66(c). Second, this court's role is significantly different from our superior court—which may act only with respect to matters of law—in that we are charged with approving a sentence we determine to be correct in law and fact, *and* that we find should be approved on the basis of the whole record. 10 U.S.C. §§ 866(c), 867(c); *see United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002). Our superior court has consistently recognized this "broad power to moot claims of prejudice" conferred upon the service Courts of Criminal Appeals. *Tardif*, 57 M.J. at 223 (quoting *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998)) (citations omitted). Although this court does not engage in acts of clemency, *see United States v. Healy*, 26 M.J. 394, 396–97 (C.M.A. 1988), we have appropriately granted sentence relief for conditions of post-trial confinement and excessive post-trial delay, even in the absence of a due process violation or specific prejudice to the appellant. *See United States v. Bodkins*, 60 M.J. 322, 324 (C.A.A.F. 2004) ("Courts of Criminal Appeals have broad discretion to grant or deny relief for unreasonable or unexplained delay, and a finding of specific prejudice is not required"); *see also United States v. Gay*, 74 M.J. 736, 743–45 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (2016).

Nevertheless, we do not find sentence relief appropriate here. Although our Article 66(c) authority to determine sentence appropriateness is broad, this court is not a forum for Appellant to seek redress for every injustice, perceived or otherwise, he has suffered at Government hands. Unlike conditions of confinement or post-trial processing delay, the BOLO, Air Force fugitives list, post-trial actions of AFOSI agents, and barment letter are neither part of a sentence adjudged by a court-martial, nor integral to the court-martial and appellate review process. While we do not condone the post-trial actions of the AFOSI agents described above, Appellant's contention that these events amounted to a *de facto* premature execution of his punitive discharge exaggerates their impact and does not transform them into an element of his sentence. In summary, we find the sentence imposed in this case commensurate with Appellant's offenses and appropriate given the facts in this case. No exercise of the extraordinary use of our Article 66(c) power to grant sentence relief is warranted here.

*Post-Trial Delay*

Next we consider the delay in the post-trial processing of Appellant's case. The Government has submitted declarations from military justice personnel at the 22d Air Refueling Wing (22 ARW), located at McConnell Air Force Base, Kansas, where Appellant was tried; 18th Air Force (18 AF), located at Scott Air Force Base, Illinois, where the convening authority was located; and the Military Justice Division (JAJM) of the Air

Force Legal Operations Agency, located at Joint Base Andrews, Maryland, where the record of trial (ROT) was received for docketing with this court. These declarations establish the following sequence of events.

Appellant's court-martial concluded on 28 April 2015 at McConnell Air Force Base. The convening authority took action on the case 58 days later, on 25 June 2015. Fourteen days later, on 9 July 2015, the ROT was placed in the mail to go to JAJM. The Government does not explain what was occurring during those 14 days following action other than to note that six of them were non-duty days.

JAJM received the ROT on 13 July 2015 and performed an administrative review the same day, noting several problems that required correction. Specifically, the ROT lacked an expurgated promulgating order and report of the result of trial; the preliminary hearing report lacked the proper attachments but had other extraneous material included with it; and the pretrial confinement proceedings documents were missing. JAJM personnel contacted 18 AF personnel the same day to request the missing documents. When they did not receive a satisfactory response by 17 July 2015, JAJM personnel mailed the ROT back to 18 AF with a cover memorandum explaining that the ROT was incomplete and listing the required actions.

On 23 July 2015, 18 AF received the ROT and notified 22 ARW of the required corrections. On 24 July 1015, 18 AF prepared an expurgated version of the promulgating order and mailed the ROT to 22 ARW for further action. 22 ARW received the ROT on 29 or 30 July 2015. Military justice personnel made the corrections on 30 July 2015. They then reinspected the ROT to ensure its accuracy and completeness before mailing it back to 18 AF on 4 August 2015.

18 AF received the ROT from 22 ARW on 7 August 2015. However, it was not re-sent to JAJM until 21 August 2015, 14 days later. The Government is not able to explain this two-week delay. JAJM received the ROT on 24 August 2015, and the case was docketed with this court the same day, 60 days after the convening authority took action.

In *United States v. Moreno*, our superior court established a presumption of unreasonable post-trial delay when the convening authority does not take action within 120 days of trial, when a record of trial is not docketed with the service court within 30 days of the convening authority's action, and when this court does not render a decision within 18 months of the case being docketed. 63 M.J. 129, 142 (C.A.A.F. 2006). Appellant asserts we should set aside the bad-conduct discharge because the 60 days that elapsed between action and docketing with this court exceeded the *Moreno* standard by 30 days. *See id.*

There are two phases to our analysis of whether Appellant is entitled to relief. First, we determine whether the delay in this case amounts to a denial of Appellant's due process right to speedy post-trial review and appeal. *Id.* at 135. Next, even if we find no due

process violation, we also consider whether this court should exercise its power under Article 66(c), UCMJ, to grant relief for excessive post-trial delay. *Tardif*, 57 M.J. at 224.

We look to the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), to determine whether post-trial delay amounts to a violation of due process rights: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely review and appeal; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005), *United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 135 (citing *Barker*, 407 U.S. at 533). However, when an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

As described above, the lapse of time between Appellant's court-martial and the docketing of his case with this court exceeded the *Moreno* standard by 30 days, establishing a facially unreasonable delay. *See Moreno*, 63 M.J. at 142. Therefore, the next question we consider is whether Appellant has been prejudiced by the delay. *See Toohey*, 63 M.J. at 362. The answer to this inquiry shapes our analysis of whether Appellant's due process rights were violated. Our superior court in *Moreno* articulated the following framework for assessing prejudice in a post-trial delay due process analysis:

> In the case of appellate delay, prejudice should be assessed in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay. We identify three similar interests for prompt appeals: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defense in case of reversal and retrial, might be impaired.

*Moreno*, 63 M.J. at 139–40 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980) (citations omitted)).

In this case, Appellant was released from confinement by mid-October 2015 at the latest. This was long before any reasonable prospect that this court would review his case and potentially grant any relief, even if the processing of his case had not been subjected to a facially unreasonable delay between the convening authority's action and docketing with this court. Thus, Appellant did not languish in oppressive incarceration while his appeal was pending. As for impairing Appellant's grounds for appeal or his defense in the

event of a retrial, the chain of events constituting the factual basis for Appellant's sole assignment of error did not even begin until he visited Cannon Air Force Base in October 2015, after his release from confinement and after his case was docketed with this court. Appellant, who pleaded guilty pursuant to a pretrial agreement with the convening authority, does not seek a retrial, and we find no circumstance that would warrant such a result. Therefore, the delay has not prejudiced him in this regard, either.

With regard to minimizing Appellant's anxiety while awaiting the outcome of his appeal, our superior court has clarified that "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Moreno*, 63 M.J. at 140. We recognize the record indicates Appellant has a significant history of mental health concerns. However, we do not find Appellant has made any particularized showing of anxiety "with a nexus to the processing of his appellate review." *Id.*

Instead, Appellant contends the prejudice he has suffered as a result of the post-trial delay is the same he described in his assignment of error—that is, the alleged unlawful increase in his punishment due to the actions of Security Forces, AFOSI, and other Air Force authorities discussed above. As we have seen, this assignment of error is without merit, though we acknowledge "[a]n appellant may suffer constitutionally cognizable anxiety regardless of the outcome of his appeal." *Id.* More to the point, these concerns are not derived from the timeliness of his post-trial review but instead from events ancillary to the investigation of Appellant's offenses and his court-martial.[3] Appellant has not established prejudice because he has not shown a particularized anxiety that has resulted from the delay in his appellate review beyond that which any other appellant may experience.

Because we find no prejudice for purposes of our analysis under *Moreno*, we will find a due process violation only if the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. It is true the root cause of the facially unreasonable delay in this case was preventable errors in the preparation of the ROT. Although identifying and correcting errors in the ROT before it reaches this court is desirable, these errors nevertheless weigh against the Government. More troubling are periods of apparently unnecessary delay in transferring the ROT, particularly the Government's inability to explain the separate two-week delays following both the convening authority's initial action on 25 June 2015 and 18 AF's receipt of the ROT from 22 ARW on 7 August 2015. However, we view the specific delays between the convening authority's action and docketing of the case with this court in the broader context of the post-trial and appellate process. As noted above, the trial-to-action phase of the processing was accomplished in a commendably swift 58

---

[3] We also note Appellant did not raise the issue of post-trial delay in his assignment of error.

days, less than half the 120-day *Moreno* standard. Thus, Appellant's case was docketed with this court only 118 days after his trial concluded. Although we recognize *Moreno* did not establish an overall trial-to-docketing time standard, and although efficiency in one phase of the process does not necessarily excuse neglect in another phase, on the whole, Appellant's case has not been subjected to severe post-trial delay. We cannot say the delay was so egregious as to call into question the fairness of the process; therefore, we find no due process violation. *See id.*

Next we consider whether Article 66(c), UCMJ, relief pursuant to *Tardif* is appropriate. 57 M.J. at 224. We are guided by factors enumerated in *Gay*, 74 M.J. at 744, with no single factor being dispositive. These factors include:

> 1. How long did the delay exceed the standards set forth in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006)?
>
> 2. What reasons, if any, has the government set forth for the delay? Is there any evidence of bad faith or gross indifference to the overall post-trial processing of this case?
>
> 3. Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, is there nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay?
>
> 4. Has the delay lessened the disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline?
>
> 5. Is there any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation?
>
> 6. Given the passage of time, can this court provide meaningful relief in this particular situation?

*Id*. We are mindful of our superior court's admonition that "delay in the administrative handling and forwarding of the record of trial and related documents to an appellate court is the least defensible of all [post-trial delays] and worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990) (internal hyphens omitted).

Applying these factors to Appellant's case is not a simple matter. As described above, the reasons for the specific delay between the convening authority's action and docketing with this court were wholly within the control of the Government. Even when one accepts the necessity of making corrections to the ROT, the Government is unable to account for significant periods of delay in moving the case forward. In particular, the same headquarters experienced two separate unexplained two-week delays in forwarding the

ROT to JAJM. Moreover, looking across the service, facially unreasonable delays in meeting the action-to-docketing standard established in *Moreno* have occurred in a number of other cases. These factors weigh in favor of granting relief.

However, other factors weigh against granting relief. Appellant has not shown how he was specifically harmed by any delay in the post-trial processing of his case. The Government actions Appellant complains of are ancillary to the progress of his case on appeal, and he has not otherwise shown any harm distinguishable from that common to other appellants awaiting the outcome of their appeals. Nor do we find any indication that the delay would specifically impair a potential retrial or other action on remand, vitiate meaningful relief to the Appellant, or otherwise harm proper functioning of the military justice system in this case.

Similarly, we do not find the specific delay between convening authority action and docketing with this court has lessened the disciplinary effect of the sentence. The delay between action and docketing was significantly mitigated in this case by the speed with which the convening authority's action followed the conclusion of the trial. As discussed above, the delay did not affect Appellant's release from confinement, nor has it affected his reduction in rank nor the ultimate impact of his as-yet unexecuted punitive discharge.

It is true that the specific delay between the convening authority's action and the docketing of Appellant's case with this court was significant. The 60 days that elapsed doubled the 30-day *Moreno* standard for a facially unreasonable delay. *See Moreno*, 63 M.J. at 142. Still, as noted above, the trial-to-action phase was relatively expeditious, requiring only 58 days as compared to the *Moreno* standard of 120 days. *See id.* This stands in marked contrast to the facts in *Gay*. There, the Government—without explanation—exceeded the *Moreno* standards both for obtaining convening authority action and for forwarding the record for appellate review, and that combined delay amounted to 253 days as compared to 118 days for the equivalent period in Appellant's case. *Gay*, 74 M.J. at 743. Therefore, viewed as a whole, the lapse of time between the end of the trial and docketing with this court was not extraordinary.

Considering all the circumstances together, we are not convinced that the dual goals of justice and good order and discipline are better served in this case by exercising our extraordinary power under Article 66(c) to disapprove some portion of the sentence than by letting stand an otherwise appropriate sentence adjudged by the military judge and approved by the convening authority.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and

66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).  Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court

ACM 38847